NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0458n.06

No. 09-2268

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jul 27, 2010**
LEONARD GREEN, Clerk

PHILLIP A. BADALAMENT,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　Plaintiff-Appellant　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　　　　)　ON APPEAL FROM THE UNITED
　　　　　　　　　　　　　　　　　　　　　　　)　STATES DISTRICT COURT FOR
UNITED OF OMAHA LIFE INSURANCE　　)　THE EASTERN DISTRICT OF
COMPANY, a life and health insurer; KEY　)　MICHIGAN
AUTOMOTIVE GROUP, designated Plan　)
Administrator and KEY SAFETY SYSTEMS,　)
INCORPORATED, a Delaware corporation,　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　Defendants-Appellees.　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)

Before:　GIBBONS and KETHLEDGE, Circuit Judges; and SARGUS, District Judge.[*]

KETHLEDGE, Circuit Judge.　Phillip Badalament brought this action against United of Omaha Life Insurance Company ("United") after United denied his claim for life-insurance benefits following the death of his brother, Paul Badalament.　The district court granted United's motion for judgment on the administrative record, and Phillip now appeals.　We affirm.

I.

Paul Badalament worked for Key Safety Systems ("Key") as a commodities manager.　Key sponsored an employee-welfare benefit plan, which was governed by the Employee Retirement Income Security Act (ERISA) and through which Paul obtained two group life-insurance policies.

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

The policies were issued by United. Key Automotive Group, an affiliate of Key, formally served as plan administrator but delegated its claims-processing authority to United.

In January 2005—around the same time that Key started implementing a reduction-in-force program—Paul went to his primary-care physician, Dr. Camisa, complaining of a fever, chills, a cough, job stress, and depression. Dr. Camisa prescribed antibiotics and suggested that Paul meet with a psychologist. Over the next two months, Paul saw Dr. Camisa three more times, had three counseling sessions, and went to a hospital emergency room twice. The counseling and various prescriptions helped to relieve some of his symptoms, but he also began to experience fatigue, blurry vision, headaches, dizziness, and anxiety. He took a two-week leave of absence, during which time he collected short-term-disability benefits. He returned to work on March 7, 2005.

Key terminated Paul's employment on March 18, 2005, providing him with a severance package that included a 20-week continuation of his salary and health-insurance—but not life-insurance—coverage. Paul did not exercise an option to convert his group life-insurance policies into individual policies.

Paul next sought medical treatment on May 7, 2005, a little more than two months after his last doctor's visit. He reported some of the same symptoms as before, plus abdominal pain and heart palpitations. As a result of those complaints, he consulted several specialists. Then, in late August, Paul was admitted to a hospital for renal failure. He died on September 8, 2005, of complications caused by multiple myeloma, a type of cancer.

Phillip was the beneficiary of Paul's life-insurance policies. He says he filed a claim with Key in September 2005 and that Key denied it a few weeks later. He also says he appealed that

denial, but received no decision. He then brought this action in the district court. The court dismissed his complaint without prejudice, finding that he had failed to exhaust his administrative remedies because he should have submitted the claim to United rather than to Key.

Phillip thereafter presented his claim to United, which denied it after determining that Paul's coverage had ceased on March 31, 2005, the last day of the month in which his employment ended. In making that determination, United considered—on its own initiative—whether Paul qualified for extended coverage under a total-disability provision. Paul would have qualified for coverage under that provision if he had been totally disabled on his last day of employment with Key. United concluded, however, that any total disability Paul experienced did not occur until shortly before his death. After an unsuccessful administrative appeal, Phillip returned to the district court. The court reviewed the administrative record and entered judgment for United.

This appeal followed.

## II.

We review *de novo* the district court's entry of judgment on an administrative record. *Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005). We apply the same legal standard as the district court, which the parties agree here is the "arbitrary and capricious" standard. *See id.* "[W]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000) (citation omitted).

Phillip argues that United acted arbitrarily and capriciously in determining that Paul was not totally disabled on March 18, 2005, his last day of employment with Key. The insurance contracts

here define totally disabled as "completely and continuously unable to perform any work or engage in any occupation" due to injury or sickness. (*See* Admin. R. 17.) Phillip argues essentially that Paul was disabled in March 2005 because he then had cancer—albeit undiagnosed—which ultimately proved to be fatal. The relevant question, however, is not whether Paul's cancer unfortunately proved to be fatal in September 2005, but whether it rendered him totally disabled in March of that year.

To answer that question, United evaluated Paul's medical records. United's medical director, Dr. Tse, then summarized in a few paragraphs the main points upon which his determination relied. He observed that Paul's symptoms prior to March 31 were, for the most part, less severe than those he experienced later in the year. Several of those early symptoms improved with treatment. Moreover, none of Paul's providers imposed any work restrictions upon him or opined that he was disabled, and Paul himself never applied for Social Security disability benefits. In addition, on July 13, 2005, Paul told Dr. Camisa that he was looking for a job. Based on Paul's medical records, therefore, Dr. Tse determined that August 24, 2005, was the earliest time at which Paul became totally disabled.

Phillip offers only his own, non-medical opinion to challenge that determination. This case thus stands in contrast to the cases he relies upon, where our arbitrary-and-capricious findings depended heavily upon the presence of contrary professional assessments. *See*, *e.g.*, *DeLisle v. Sun Life Assurance Co. of Can.*, 558 F.3d 440, 446-47 (6th Cir. 2009); *Rochow v. Life Ins. Co. of N. Am.*, 482 F.3d 860, 864 (6th Cir. 2007); *McDonald v. W.-S. Life. Ins. Co.*, 347 F.3d 161, 169-70 (6th Cir.

2003). We see no basis on the record before us to hold that United's determination that Paul was not disabled on March 18, 2005 was arbitrary or capricious.

Phillip argues, however, that "there is no 'logical incompatibility between working full time and being disabled from working full time.'" *See Rochow*, 482 F.3d at 865 (quoting *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003)). But that depends on how the contract defines total disability. The definitions in *Rochow* and *Hawkins* were significantly narrower than the one here; indeed, having the ability to work and being "completely and continuously unable to perform any work" could hardly be *more* incompatible. Moreover, in *Rochow*, the insured technically remained on his employer's payroll even though he "could no longer perform the duties required of his position." *Id.*; *see also DeLisle*, 558 F.3d at 443 (employee was fired because "she was not doing her job"). Nothing in the record here suggests that Paul's job performance had deteriorated. Phillip does point to Paul's short-term-disability leave between February 22, 2005 and March 6, 2005; but that leave shows only that Paul experienced a period of disability, not a *continuous* inability to work.

Phillip's final argument is that conflicts of interest—United's, as both decider of eligibility and payer of benefits, and Dr. Tse's, as United's employee—rendered the denial arbitrary and capricious. But his aspersions are no substitute for facts that show bias; and Phillip provides none of those here.

The district court's judgment is affirmed.