RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0123p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DANIEL J. ROCHOW,

        *Plaintiff-Appellee,*

    *v.*

LIFE INSURANCE CO. OF NORTH AMERICA,

        *Defendant-Appellant.*

No. 05-2100

>

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-73628—Arthur J. Tarnow, District Judge.

Argued: September 19, 2006

Decided and Filed: April 3, 2007

Before: CLAY and GILMAN, Circuit Judges; OBERDORFER, District Judge.[*]

---

## COUNSEL

**ARGUED:** Angela M. Brown, HONIGMAN, MILLER, SCHWARTZ & COHN, Lansing, Michigan, for Appellant. Erik W. Scharf, Coconut Creek, Florida, for Appellee. **ON BRIEF:** Angela M. Brown, HONIGMAN, MILLER, SCHWARTZ & COHN, Lansing, Michigan, for Appellant. Erik W. Scharf, Coconut Creek, Florida, John J. Cooper, COOPER LAW FIRM, Rochester, Michigan, for Appellee.

---

## OPINION

---

    OBERDORFER, District Judge. Daniel Rochow, the former President of Arthur J. Gallagher & Co. ("Gallagher"), currently suffers from HSV-Encephalitis, a rare and severely debilitating disease. The question in this case is whether or not the insurer, Life Insurance Company of North America ("LINA") acted arbitrarily and capriciously when it concluded that Rochow was not disabled on the date that he left his job, therefore denying his claim for disability benefits. The district court held that LINA's determination was arbitrary and capricious and unsupported by the administrative record. For the reasons hereinafter stated, we AFFIRM that decision.

---

[*] The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

1

**BACKGROUND**

A. Rochow's Symptoms and Diagnosis

The Administrative Record reveals the following facts. Daniel Rochow was the President of Gallagher for ten years. He had long-term disability coverage through Gallagher's Group Insurance Plan (the "Plan"), administered by LINA. In 2001, Rochow began to experience short-term memory loss, occasional chills, sporadic sweating, and stress at work. On June 15, 2001, he visited Dr. Bruce Forman to discuss his symptoms. Dr. Forman took notes, but did not record any conclusions.

In July 2001, Gallagher demoted Rochow from President to Sales Executive - Account Manager. According to Jack Tellerico, an Area Vice President and Rochow's co-worker at Gallagher, this demotion occurred because Rochow could no longer perform his duties as President.

On August 21, 2001, Rochow returned to Dr. Forman. He reiterated his concerns about his short-term memory loss, which had now been ongoing for six to eight months. Dr. Forman again took notes regarding Rochow's complaints. He concluded that Rochow was suffering from depression, prescribed anti-depressants, and referred him to a neurologist. [JA 131].

On October 2, 2001, Rochow saw a neurologist, Dr. Mary Ann McKee. According to Dr. McKee's notes, during the examination, Rochow was at times unable to answer her questions or describe his problems. He was tearful and cried often during the exam. He told Dr. McKee that the reason for his visit was "distractibility and difficult[sic] with memory." [JA 153]. He explained that "for the last six months he has noticed that he might think of something and then in the middle of his thoughts he will lose the rest of the thought and not be able to complete the sentence." [JA 153]. Dr. McKee concluded that "his memory difficulty is really secondary to depression and does not represent an organic brain disorder." [JA 154]. An MRI on October 9, 2001 was "unremarkable." [JA 156].

During this time, Rochow was having increasing difficulties at work. According to Tellerico, Rochow became unable to perform duties as a Sales Executive - Account Manager, which included budgeting revenue, developing sales plans, and identifying new clients or new products for existing clients; "[s]ince Mr. Rochow could not perform these material duties, he was not able to continue working at Arthur J. Gallagher & Co." [JA 113]. January 2, 2002 was his last day of employment, and the day on which his disability coverage with LINA lapsed.

In February 2002, Rochow visited his son in Sarasota, Florida. On the evening of February 17, security guards discovered Rochow wandering alone in a parking lot, unable to explain why he was there. His speech was slurred, and he exhibited amnestic symptoms. The Sarasota Fire Department transported him to the emergency room at Sarasota Memorial hospital. There, Rochow believed he was in Michigan and continued to exhibit amnestic symptoms. A radiologic scan was again "unremarkable." [JA 415]. He was involuntarily civilly committed at a psychiatric hospital.

On February 20, 2002, Rochow was brought back to the emergency room because of a "sudden change and altered mental status." [JA 223]. The emergency room staff conducted a lumbar puncture. An infectious disease specialist and a neurologist diagnosed Rochow with HSV-Encephalitis. HSV-Encephalitis is an extremely rare form of herpes that can cause "brain trauma not unlike the sort associated with strokes, car accidents, or gunshot wounds." *In re Myrick*, 624 A.2d 1222, 1224 (D.C. Ct. App. 1993). He was prescribed long-term anti-viral medications. On February 25, 2002, a physician attempted to interview Rochow; he was still unable to provide helpful information. Based on discussions with Rochow's ex-wife and a colleague, this physician concluded that "[t]he patient's history fits better with a more slow onset process." [JA 262].

On March 5, 2002, Rochow was transferred by medical helicopter to Henry Ford Hospital in Michigan for continued treatment. He was discharged on March 14, 2002 with a recommendation for assisted living or 24-hour supervision at home, and with the sad prognosis that "he may never fully recover or be able to function on his own." [JA 467].

B. The Claims Process

In late December 2002, Rochow, through his personal representative, filed a claim for disability benefits pursuant to LINA's insurance plan. The plan provided in relevant part as follows:

## WHEN COVERAGE ENDS

Your coverage ends on the earliest of the following dates:
. . . the day you are no longer in Active Service.

* * *

## DESCRIPTION OF BENEFITS
## WHAT IS COVERED

**Disability Benefits**
We will pay Disability Benefits if you become Disabled while covered under this Policy. You must satisfy the Elimination Period, be under the Appropriate Care of a Physician, and meet all the other terms and conditions of the Policy. You must provide to us, at your own expense, satisfactory proof of Disability before benefits will be paid.

* * *

## DEFINITIONS
. . .
**Active Service**
If you are an Employee, you are in Active Service on a day which is one of your Employer's scheduled work days if either of the following conditions are met.
1.      You are actively at work. This means you are performing your regular occupation for the Employer on a Full-time basis, either at one of the Employer's usual places of business or at some location to which the Employer's business requires you to travel.
2.      The day is a scheduled holiday, vacation day or period of Employer approved paid leave of absence.

You are in Active Service on a day which is not one of the Employer's scheduled work days only if you were in Active Service on the preceding scheduled work day.
. . .
**Disability**
You are considered Disabled if, solely because of Injury or Sickness, you are . . . unable to perform all the material duties of your Regular Occupation or a Qualified Alternative[.]

[JA 27-37].

Rochow's initial claim form incorrectly stated that he was still employed at the time of his medical crisis in February 2002. LINA issued its first denial letter on January 27, 2003, concluding that Rochow's actual employment terminated on January 2, 2002. Rochow, now represented by

counsel, responded that his employment had indeed terminated on January 2, 2002, but that he had been disabled and suffered the effects of his condition throughout 2001.

LINA issued a second denial on April 3, 2003. It acknowledged Rochow's disease and symptoms but still concluded that Rochow was not disabled until his acute medical crisis:

> "[I]t is evident that Mr. Rochow experienced the affects [sic] of encephalitis throughout the calendar year of 2001[.] . . . According to the medical records, Mr. Rochow has experienced the symptoms of depressive disorders continuously while working in 2001. Because he continued to work, he cannot be considered disabled based on the policy's definition of disability. It appears his inability to function did not occur until February 18, 2002."

[JA 121-22].

Rochow again challenged the denial. He submitted a letter from Dr. Forman, dated September 28, 2003, stating: "it is my opinion that Mr. Rochow had memory problems that would have affected his ability to perform tasks as an Insurance Salesman in 2001." [JA 112]. On December 22, 2003, LINA issued a third denial suggesting that his claim was being denied for general lack of documentation. Finally, on July 16, 2004, at the end of the administrative appeals process, LINA denied his claim for lack of medical evidence.

## PROCEDURAL BACKGROUND

Rochow's challenge of LINA's determination in the Eastern District of Michigan involves the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. The district court ruled from the bench that LINA's determination that Rochow was not disabled on January 2, 2002 was arbitrary and capricious and unsupported by the administrative record. In the context of the record as a whole, the district court found that "the February 17th [2002] incident [was] corroborative evidence of a pre-existing disability."

Specifically, the district court reasoned as follows:

> [T]he fact that he was able to work is certainly evidence for the Defense. However, when we have Mr. Tellerico saying he was on the payroll, but he wasn't able to do the work that he had been doing before, and we have such a severe loss of memory, compounded by the depression, and it is clear that that memory loss – it seems to be clear that that memory loss may have contributed to his being demoted before he claimed disability, I think he has prevailed.
> And certainly the Defense is right; that the Plaintiff has the burden of proof initially as to disability and has a much heavier burden of proof, when he comes to this court, to show not only disability, but that the decision was arbitrary and capricious.
> The fact that he was collecting pay, I don't think is relevant. You've got a person who is the head of the agency, Arthur Gallagher & Company. . . . [T]he letter is not – from Dr. Forman is not overwhelming. But when you put it in the context of his job, career – his career path, which was downhill, and the lack of any medical evidence presented in support of finding him not disabled, I think the Plaintiff has prevailed.

[JA 552-54]. Defendant timely appealed.

The primary issue before us is whether Rochow presented sufficient evidence to establish that he was disabled within the meaning of the Plan before or on January 2, 2002.

## DISCUSSION

Rochow's claim is governed by ERISA. ERISA provides that insurance companies "shall discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries and [] for the exclusive purpose of [] providing benefits to participants and their beneficiaries . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter . . ." 29 U.S.C. § 1104(a)(1).

We "review *de novo* the decision of a district court granting judgment in an ERISA disability benefit action based on an administrative record." *Glenn v. MetLife*, 461 F.3d 660, 665 (6th Cir. 2006) (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998)), *petition for cert. filed*, 75 U.S.L.W. 3368 (U.S. Jan. 3, 2007)(No.06-92).

Where, as here, an insurance plan administrator is vested with discretion to interpret the plan, we review the denial of benefits under the arbitrary and capricious standard. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Evans v. Unumprovident Corp.*, 434 F.3d 866, 875 (6th Cir. 2006). This standard requires "review of the quality and quantity of the medical evidence and the opinions on both sides of the issues." *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). In conducting our review, we are limited to consideration of the pre-packaged administrative record. *See Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005). A decision should be upheld if it is "the result of a deliberate principled reasoning process" and "supported by substantial evidence." *Killian v. Healthsource Provident Adm'rs*, 152 F.3d 514, 520 (6th Cir. 1998) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)).

We conclude that the record before us supports the district court's decision that the Plan Administrator's denial of Rochow's claims was arbitrary and capricious. The fact that Rochow remained on the payroll until January 2, 2002 is not determinative as to whether or not he was disabled during that time; there is no "logical incompatibility between working full time and being disabled from working full time." *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003). Tellerico states that Rochow was demoted, and ultimately terminated, because he could no longer perform the duties required of his position. Rochow does not have to prove that he was disabled in 2001 due to HSV-Encephalitis; only that in 2001 he was unable to perform his duties due to injury or sickness. Furthermore, the policy does not require medical evidence, only "satisfactory proof."

The medical evidence in the record is inconclusive as to the reasons for Rochow's 2001 symptoms, although we note that LINA's April 3, 2003 denial letter conceded that he was suffering from those symptoms throughout 2001. Contemporaneous medical notes document Rochow's cognitive deterioration. Competing evidence in the record showing that his 2001 symptoms were not disabling is conspicuously absent. The ultimate tragic incident in Sarasota and its extended onset and sequelae, Dr. Foreman's retrospective letter, Tellerico's account of Rochow's duties and his inability to perform them, and the entire record, viewed in perspective, confirm the district court's ruling that LINA's denial of benefits was arbitrary and capricious and unsupported by substantial evidence. *Killian*, 152 F.3d at 520. LINA's determination was not the result of a deliberate, principled reasoning process. *Id.*; *Glenn*, 461 F.3d at 666. Nor does the decision appear to have been made "solely in the interest of the participants and beneficiaries and [] for the exclusive purpose of [] providing benefits to participants and their beneficiaries" as required by ERISA. 29 U.S.C. § 1104(a)(1).

**CONCLUSION**

Accordingly, the district court's order is AFFIRMED.