McKEAGUE, J., delivered the opinion of the court in which BOGGS, BATCHELDER, GIBBONS, ROGERS, SUTTON, COOK, GRIFFIN, and KETHLEDGE, JJ., joined, and WHITE, J., joined in part. GIBBONS, J. (pp. 376-78), delivered a separate concurring opinion in which BATCHELDER and COOK, JJ., joined. WHITE, J. (pp. 378-82), delivered a separate opinion concurring in part and dissenting in part. STRANCH, J. (pp. 382-95), delivered a separate dissenting opinion in which COLE, C.J., KEITH, MOORE, CLAY, and DONALD, JJ., joined, and WHITE, J., joined in part.
OPINION
McKEAGUE, Circuit Judge.
This is the second time this case has been before the Sixth Circuit. The first time, we affirmed the district court’s determination that defendant Life Insurance Company of North America (“LINA”) acted arbitrarily and capriciously when it denied Daniel Rochow’s claim for long-term disability benefits under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. (“ERISA”). Rochow v. LINA, 482 F.3d 860 (6th Cir.2007) (“Rochow I ”). Our second review comes after the district court ordered that LINA disgorge profits flowing from its wrongful denial of benefits. A divided three-judge panel affirmed the district court’s order. Rochow v. LINA, 737 F.3d 415 (6th Cir.2013) (“Rochow II ”). We granted rehearing en banc, thereby vacating Rochow II, in order to reconsider as a full court whether the disgorgement award was proper. For the reasons that follow, we vacate the disgorgement award and remand the case to the district court to determine whether prejudgment interest is appropriate.
I
The facts of this case are adequately summarized in Rochow II and are reproduced here:
In mid-2000, the late Daniel J. Rochow (“Rochow”), a principal of Universico Insurance Company (“Universico”), sold his interest in Universico to Arthur J. Gallagher & Co. (“Gallagher”) and became President of Gallagher. As an employee of Gallagher, Rochow was covered under Life Insurance Company of North America (“LINA”) policy number LK 30214. LINA’s policy provided for disability benefits if an employee gave “satisfactory proof’ that “solely because of Injury or Sickness [the employee is] unable to perform all material duties of [his or her] Regular Occupation or a Qualified Alternative^]” See Rochow v. LINA (“Rochow I”), 482 F.3d 860, 863-64 (6th Cir.2007).
In 2001, Rochow began to experience short term memory loss, occasional chills, sporadic sweating, and stress at work. Id. In July 2001, Gallagher demoted Rochow from President to Sales Executive-Account Manager because Rochow could no longer perform his duties as President. Id. Rochow continued to have difficulties, and as a result of his inability to perform his job, Gallagher forced Rochow to resign effective January 2, 2002. Id. In February 2002, Rochow experienced periods of amnesia and was hospitalized. Id. During his February 2002 hospital stay, Rochow was diagnosed with HSV-Encephalitis, a *367 rare and severely debilitating brain infection. Id.
On or about December 31, 2002, Rochow filed a claim for long term disability benefits. LINA denied Rochow benefits stating that Rochow’s employment ended before his disability began. Rochow I, 482 F.3d at 864.
Rochow appealed LINA’s denial and included medical records from 2001 that stated Rochow was suffering short-term memory loss during 2001. In denying Rochow’s appeal, LINA noted that Rochow experienced the effects of encephalitis during 2001 but denied coverage because Rochow continued to work and was not disabled until February 2002. Rochow I, 482 F.3d at 864.
Rochow again appealed and included a report from Jack Tellerico, an area vice president for Gallagher, which identified the material duties of Rochow’s position with Gallagher and stated that during 2001, Rochow was not able to perform all the material duties of those jobs due to his lack of memory. LINA again denied Rochow’s claims stating, “[s]ince, Mr. Rochow’s long-term disability claim was not filed until after his termination date; his claim was denied because of, ‘not considered actively working at time of disability.’ It appears no additional documentation was provided which would support that Mr. Rochow was actively working when he became disabled.’ ” (Page ID 4056) (Joint App’x) (sic).
Rochow appealed the denial a third time. LINA denied his claim for the final time stating Rochow had not presented any medical records to support his inability to work prior to the date he was terminated.
On September 17, 2004, Rochow filed a complaint against Cigna Group Insurance, LINA’s parent company, in the United States District Court for the Eastern District of Michigan. Compl., ECF No. 1. The complaint states two claims under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3): one to recover full benefits due to the failure to pay benefits in violation of the terms of the plan and one to remedy the alleged breach of fiduciary duty in ERISA Section 404(a), 29 U.S.C. § 1104(a).
Defendant moved for judgment on the record and Plaintiff moved for summary judgment. On June 24, 2005, Judge Tarnow of the United States District Court for the Eastern District of Michigan heard oral arguments on the parties’ motions. At the conclusion of oral argument, Judge Tarnow stated on the record that LINA acted arbitrarily and capriciously in finding Rochow was not disabled while still employed and that Rochow had prevailed. In a one page order which incorporated the reasoning stated on the record, the Court granted Rochow’s motion and denied LINA’s motion. The same day, the district court clerk filed a judgment which purported to dismiss the case and was signed by the district court clerk and Judge Tarnow.
LINA appealed the June 24, 2005 Order denying Defendant’s motion and granting Plaintiffs motion. Rochow moved to enforce judgment or require Defendant to post a supersedeas bond pursuant to Federal Rule of Civil Procedure 62(d). Eventually this motion was withdrawn and Defendant deposited a supersedeas bond in the amount of $250,000.
On April 3, 2007, a panel of this Court affirmed Judge Tarnow’s Order. Rochow I, 482 F.3d at 866. The Rochow I panel held the record supported the district court’s decision that LINA’s denial of Rochow’s claims was arbitrary and capricious, was not the result of a delib *368 erate, principled reasoning process, and did not appear to have been made “ ‘solely in the interest of the participants and beneficiaries and [] for the exclusive purpose of [ ] providing benefits to participants and their beneficiaries’ as required by ERISA. 29 U.S.C. § 1104(A)(1).” Id. The opinion noted, “there is no ‘logical incompatibility between working full time and being disabled from working full time’ ” and that the policy required only “satisfactory proof of disability, not medical evidence.” Id. (internal citations omitted). On the same day, the clerk for this Court entered judgment stating “the order of the district court is AFFIRMED.” The clerk of this Court issued the mandate on April 26, 2007, and it was filed May 3, 2007.
On May 10, 2007, the parties filed a stipulation “to toll the time for all parties and counsel to bring any post remand motions,” and the district court entered an Order tolling the filing deadlines for post-remand motions until further order of the court. On April 3, 2008, the district court referred the remaining issues in dispute to United States Magistrate Judge Whalen. Over the next few months, Judge Whalen held several status conferences.
On November 10, 2008, LINA filed a statement of resolved and unresolved issues and Plaintiff[1] filed motions for attorneys’ fees and costs and equitable accounting. LINA’s statement of issues represented that the parties still disputed several issues, including whether Plaintiff was entitled to a disgorgement of profits.
Plaintiff also filed a motion seeking an equitable accounting and a request for disgorgement. In that motion, Plaintiff argued Rochow’s estate was entitled to disgorgement of profits because LINA breached its fiduciary duties, and disgorgement was necessary to prevent LINA’s unjust enrichment resulting from profits it earned on the wrongfully retained benefits. Plaintiff supported the motion with the report of his expert, Dr. David C. Crosen. In calculating LINA’s “Return on (Average) Equity” (“ROE”), Dr. Crosen determined LINA used Rochow’s benefits to earn between 11 percent and 39 percent annually and, therefore, made approximately $2.8 million by retaining Rochow’s benefits.
In June 2009, the district court granted Plaintiffs motion for an equitable accounting of profits and disgorgement of the same. LINA then moved to strike Croson’s report and to preclude him from testifying as an expert on the ground that his principles and methods were unreliable under Federal Rule of Civil Procedure 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 [113 S.Ct. 2786, 125 L.Ed.2d 469] (1993). The motion was referred to the magistrate judge, who issued a report recommending that the motion be denied, noting that the matter was being tried to the court rather than a jury and finding that many of LINA’s objections went to the weight of Croson’s opinions, not their admissibility. The district court adopted the magistrate judge’s recommendation over LINA’s objections.
After the parties briefed the issue, the district court conducted an evidentiary *369 hearing in November 2011 on the issue of calculation of profits for disgorgement. At the hearing, LINA offered the testimony of its expert, Timothy Holzli, who served as the Chief Accounting Officer for the group insurance division of Cigna. Holzli opined Rochow’s withheld benefits earned LINA profits of $32,732. He arrived at that figure by treating the withheld benefits as though they were earning interest as part of LINA’s investment assets. On cross examination, Holzli acknowledged, however, that the account was not a separate or segregated account. He also conceded that LINA payed [sic] its operating expenses and benefits from the account, and the money in the account formed a basis for LINA to write insurance coverage.
Following additional briefing and oral argument, the district court issued its decision on calculation of profits for disgorgement in March 2012.[2] The district court adopted Croson’s ROE metric as the basis for determining the profits LINA gained from the wrongfully withheld funds, and it rejected Holzli’s retained investment margin metric. It did so, in part, based upon its factual finding that the subject money was not placed in a separate investment account, but rather was available for LINA to use for any business purpose. In the last paragraph of its decision, the district court stated:
Plaintiff will, within two weeks from this order, submit a final amount to be disgorged by Defendant based upon the Court’s rulings, above. Defendant may then submit a memorandum in response within seven days. This memorandum is limited only to any objections regarding the accuracy of Plaintiffs calculations based on this order, and is not an invitation to relitigate issues already decided by this Court.
(Page ID 3576).
On May 4, 2012, in its response brief to Plaintiffs final calculation of disgorgement, LINA argued for the first time that permitting disgorgement was outside the scope of the mandate in the first appeal. Nonetheless, on July 24, 2012, the district court ordered disgorgement of $3,797,867.92. The court noted, “Defendant has, in response to a proposed order submitted by Plaintiff, raised objections. To the extent that these objections do not simply repeat arguments already rejected by the Court, and raise new issues in Defendant’s argument concerning the ‘mandate rule,’ they are untimely and will not be considered.” (Page ID 3907). LINA timely appealed.
Rochow II, 737 F.3d at 417-20 (alteration in original).
On December 6, 2013, a panel of this court affirmed the disgorgement award, holding that disgorgement was properly ordered under ERISA § 502(a)(3) for LINA’s breach of fiduciary duty and that Rochow’s claim for such relief was not an impermissible repackaging of a claim for wrongful denial of benefits under § 502(a)(1)(B). Id. at 423. The Rochow II panel stated that the successful result obtained by Rochow on his claim for wrongful denial of benefits in Rochow I did not preclude additional relief on Rochow’s breach-of-fiduciary-duty claim. Id. at 422-23. LINA’s petition for en banc rehearing was granted on February 19, 2014, vacating the panel’s decision in Rochow II.
*370 II
There is essentially one issue before us: Is Rochow entitled to recover under both ERISA § 502(a)(1)(B) and § 502(a)(3) for LINA’s arbitrary and capricious denial of long-term disability benefits? As a result of our ruling in Rochow 1, Rochow recovered all benefits that he had been wrongfully denied under § 502(a)(1)(B). We now decide whether Rochow may also recover under § 502(a)(3), which makes “appropriate equitable relief’ available to redress such violations as a breach of fiduciary duty.[3] The district court held that Rochow could recover under both provisions because Rochow pleaded claims for two distinct kinds of relief, namely one claim to recover benefits arbitrarily and capriciously denied by *371 LINA, and one claim for disgorgement of profits realized by LINA as a result of its breach of fiduciary duty consisting of the arbitrary and capricious denial of benefits. Contrary to Rochow’s arguments, Rochow is made whole under § 502(a)(1)(B) through recovery of his disability benefits and attorney’s fees, and potential recovery of prejudgment interest, discussed below. Allowing Rochow to recover disgorged profits under § 502(a)(3), in addition to his recovery under § 502(a)(1)(B), based on the claim that the wrongful denial of benefits also constituted a breach of fiduciary duty, would — absent a showing that the § 502(a)(1)(B) remedy is inadequate — result in an impermissible duplicative recovery, contrary to clear Supreme Coxirt and Sixth Circuit precedent.
ERISA has six remedial provisions. The remedial provisions relevant to this action are § 502(a)(1)(B) and § 502(a)(3), which state:
(a) Persons empowered to bring a civil action
A civil action may be brought—
(1) by a participant or beneficiary—
(B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights under the terms of the plan;
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this sub-chapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.
29 U.S.C. § 1132(a).
Unfortunately for Rochow, Supreme Court precedent construing the interplay of these provisions dictates a result contrary to that reached by the district court. In Varity Corp. v. Howe, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), the Supreme Court allowed a group of plaintiffs, who were unable to bring a claim under § 502(a)(1)(B), to bring suit for breach of fiduciary duty under § 502(a)(3). As the Court explained, § 502(a)(3) “functions as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy.” Id. at 513, 116 S.Ct. 1065. Importantly, however, the Varity Court limited this expansion of ERISA coverage by noting that “where Congress elsewhere provided adequate relief for a beneficiary’s injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate.” Id. at 515, 116 S.Ct. 1065 (emphasis added) (internal quotation marks omitted).
The Varity Court thus emphasized that ERISA remedies are concerned with the adequacy of relief to redress the claimant’s injury, not the nature of the defendant’s wrongdoing. The district court’s use of equitable relief under § 502(a)(3) as the vehicle for its disgorgement award misses the mark. Instead of focusing on the relief available to make Rochow whole, the award reflects concern that LINA had wrongfully gained something, a consideration beyond the ken of ERISA make-whole remedies. Varity indicates that equitable relief is not ordinarily appropriate where Congress has elsewhere provided adequate means of redress for a claimant’s injury. In other words, a claimant cannot pursue a breach-of-fiduciary-duty claim under § 502(a)(3) based solely on an arbitrary and capricious denial of benefits where the § 502(a)(1)(B) remedy is .adequate to make the claimant whole. Here, there is no showing that the benefits re *372 covered by Rochow, plus the attorney’s fees awarded, plus the prejudgment interest that may be awarded on remand, are inadequate to make Rochow whole. Absent such a showing, there is no trigger for “further equitable relief’ under Varity.
If an arbitrary and capricious denial of benefits implicated a breach of fiduciary duty entitling the claimant to disgorgement of the defendant’s profits in addition to recovery of benefits, then equitable relief would be potentially available whenever a benefits denial is held to be arbitrary or capricious. This would be plainly beyond and inconsistent with ERISA’s purpose to make claimants whole. Tellingly, the appellate briefing contains citation to no case that allowed disgorgement of profits under § 502(a)(3) after the claimant recovered for wrongful denial of benefits under § 502(a)(1)(B).
Here in the Sixth Circuit we have had occasion to apply Varity’s teaching on the relationship between § 502(a)(1)(B) and § 502(a)(3) in Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609 (6th Cir.1998). In Wilkins, Wilkins applied for long-term disability benefits and, after the plan administrator denied his claim, sued for benefits under § 502(a)(1)(B) and for equitable relief under § 502(a)(3) based on breach of fiduciary duty. We denied relief under § 502(a)(3) stating:
Because [§ 502(a)(1)(B) ] provides a remedy for Wilkins’s alleged injury that allows him to bring a lawsuit to challenge the Plan Administrator’s denial of benefits to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to [§ 502(a)(3) ].
Id. at 615. Just like the plaintiff in Wilkins, Rochow is not entitled to relief under the catchall provision: such relief is unnecessary and unavailable because he has an adequate remedy under § 502(a)(1)(B).
LINA thus contends the district court’s disgorgement award contravenes Wilkins and allows a claimant to improperly repackage a claim for benefits wrongfully denied as a cause of action for breach of fiduciary duty. Rochow insists that Wilkins provided a way to ensure only that claimants do not attempt an “end run” around ERISA’s limitations by repackaging an unsuccessful claim for benefits as a claim for “appropriate relief’ based on an alleged breach of fiduciary duty. Rochow claims that Wilkins bars relief sought under § 502(a)(3) only if that same type of relief could have been obtained under § 502(a)(1)(B). Because he purportedly seeks a type of relief under § 502(a)(3) (i.e., disgorgement of LINA’s profits) different from and in addition to what is available to him under § 502(a)(1)(B), Rochow contends that Wilkins does not preclude his claim for this additional remedy to obtain complete relief.
Rochow mischaracterizes Wilkins. A claimant can pursue a breach-of-fidueiary-duty claim under § 502(a)(3), irrespective of the degree of success obtained on a claim for recovery of benefits under § 502(a)(1)(B), only where the breach of fiduciary duty claim is based on an injury separate and distinct from the denial of benefits or where the remedy afforded by Congress under § 502(a)(1)(B) is otherwise shown to be inadequate. See Gore v. El Paso Energy Corp. Long Term Disability Plan, 477 F.3d 833, 840-42 (6th Cir.2007). Wilkins simply affords no support for the argument that § 502(a)(3) equitable relief may be appropriate to further redress a wrongful denial of benefits adequately remediable under § 502(a)(1)(B). Rather, Wilkins makes clear that the availability of relief under § 502(a)(3) is contingent on a showing that the claimant could not avail himself or herself of an adequate remedy *373 pursuant to § 502(a)(1)(B). Wilkins, 150 F.3d at 615.
Rochow contends there is no legitimate concern about impermissible claim “repackaging” when a benefits-claimant prevails and seeks “other appropriate equitable relief.” We disagree. Impermissible repackaging is implicated whenever, in addition to the particular adequate remedy provided by Congress, a duplicative or redundant remedy is pursued to redress the same injury. Because Rochow was able to avail himself of an adequate remedy for LINA’s wrongful denial of benefits pursuant to § 502(a)(1)(B), he cannot obtain additional relief for that same injury under § 502(a)(3).
In Hill v. Blue Cross and Blue Shield of Michigan, 409 F.3d 710 (6th Cir.2005), we further clarified the interplay of § 502(a)(1)(B) and § 502(a)(3). In Hill, the plaintiffs brought a class-action lawsuit seeking individual relief for wrongfully denied benefits under § 502(a)(1)(B) and for plan-wide injunctive relief under § 502(a)(3) based upon the defendant’s alleged breach of its fiduciary duty. The district court dismissed the § 502(a)(3) claim, finding that “these claims were merely repackaged claims for individual benefits and did not constitute actual fiduciary-duty claims.” Id. at 717. We reversed. Whereas Wilkins involved the rejection of fiduciary-duty claims on the basis that they were actually disguised individual-benefits claims, in Hill the need for relief under the catchall provision arose out of a defect in plan-wide claim handling procedures, implicating a different injury. “The award of benefits to a particular [plaintiff] based on an improperly denied claim for emergency-medical-treatment expenses will not change the fact that [defendant] is using an allegedly improper methodology for handling ... claims.” Id. at 718. To remedy this separate and distinct injury, we permitted injunctive relief under § 502(a)(3), not an additional award of monetary damages for the same denial of benefits. Thus, Hill recognized an exception to. Varity and Wilkins where “[o]nly injunctive relief of the type available under [§ 502(a)(3) would] provide the complete relief sought by Plaintiffs by requiring [Defendant] to alter the manner in which it administers all the Program’s claims____” Id. at 718 (emphasis added). In Hill, as in Varity, the primary purpose of ERISA was given effect — ensuring availability of an adequate remedy to make the plaintiffs whole.
The present case does not fall within the Hill exception to Varity and Wilkins. Hill distinguished between the denial of individual claims and plan-wide mishandling of claims as two distinct injuries. Section 502(a)(1)(B) provided relief for the denial of the Hill plaintiffs’ individual benefits, and § 502(a)(3) remedied the systemic plan-wide problems that posed a potential for future injury. Contrast Hill with the present case, where the only asserted injury to Rochow is the denial of benefits and withholding of the same benefits. These are not distinct injuries; they are one and the same injury. Because Rochow has an adequate and effective remedy for this injury under § 502(a)(1)(B), he is not also entitled to relief under § 502(a)(3).
Rochow continues to claim that the disgorgement award (“equitable accounting”) remedies an injury entirely distinct from the injury remedied by recovery of his benefits, and that he has therefore suffered two distinct injuries. Rochow contends that he suffered his first injury when LINA improperly denied his benefits, and he suffered his second “injury” when LINA used the funds it owed him to generate $3.7 million in profits for its own *374 account without remitting the profits to him. Yet, in an action for wrongful denial of benefits, like this one, the denial of benefits necessarily results in a continued withholding of benefits until the denial is either finalized or rectified. The denial is the injury and the withholding is simply ancillary thereto, the continuing effect of the same denial. Together they comprise a single injury. By withholding payment of benefits until the denial was either finalized or rectified, LINA did not violate a second, distinct duty owed to Rochow and did not inflict a second injury.
Nor can it be said that Rochow suffered a second injury, or that his injury was exacerbated, as a result of any gain realized by LINA before it paid the wrongfully withheld benefits. Rochow’s loss remained exactly the same irrespective of the use made by LINA of the withheld benefits. Despite Rochow’s creative use of semantics, the reality remains clear: Rochow suffered one injury, the denial of his benefits. And neither Rochow nor the dissent has succeeded in identifying any way in which the remedy available under § 502(a)(1)(B) — i.e., recovery of benefits and attorney’s fees and, potentially, prejudgment interest — is inadequate to make Rochow whole. The remedy Congress chose to make available under § 502(a)(1)(B) having thus not been shown to be inadequate, it follows that permitting Rochow to obtain further equitable relief for the same injury under § 502(a)(3) would contravene the scheme established by Congress as well as the Supreme Court’s teaching in Varity.
Rochow cites two cases to support his claim that he is entitled to equitable relief under § 502(a)(3). He contends that Edmonson v. Lincoln Nat’l Life Ins. Co., 725 F.3d 406 (3d Cir.2013), stands for the proposition that disgorgement of profits may be an appropriate remedy for breach of fiduciary duty even in the absence of a showing of financial loss by the claimant. The discussion in Edmonson on which Rochow relies is addressed solely to the question whether an ERISA claimant had standing to bring a claim for disgorgement of profits notwithstanding a lack of showing of financial loss. The court answered this question in the affirmative, based on trust law principles. Id. at 415-17. However, the court ultimately denied relief for lack of a showing of a breach of fiduciary duty and lack of a showing that any such breach proximately caused injury to the claimant. Id. at 423-26. There was no claim in Edmonson for benefits wrongfully denied, but only a stand-alone claim for breach of fiduciary duty. Hence, the Edmonson court did not have occasion to address the interplay of § 502(a)(1)(B) and § 502(a)(3) or to consider whether the availability of other remedies under ERISA rendered equitable relief under § 502(a)(3) inappropriate. Edmonson’s observations about standing, viewed in context,' are of limited significance to the issue before us.
Rochow also relies on CIGNA Corp. v. Amara, — U.S. -, 131 S.Ct. 1866, 1881, 179 L.Ed.2d 843 (2011), to support his argument that the failure to show a second, distinct injury is not fatal to his disgorgement award under § 502(a)(3). In Amara, he contends, the Court recognized that in an action for equitable relief under § 502(a)(3), the requisite “actual harm” may consist simply of “the loss of a right protected by ERISA or its trust-law antecedents.” Id. at 1881. Again, the argument misses the point. There is no dispute that “appropriate equitable relief” may be obtained under § 502(a)(3) to redress an ERISA violation by a plan fiduciary. The point, as detailed above, is that Rochow did not suffer an injury remediable under § 502(a)(3) in this case. Rochow suffered the wrongful denial of his bene *375 fits, an injury adequately remedied under § 502(a)(1)(B). Despite Rochow’s insistence to the contrary, his breach-of-fiduciary-duty claim for disgorgement of profits is nothing but a repackaged claim for benefits wrongfully denied, a claim for which, per Varity, additional equitable relief is not appropriate because not necessary to make Rochow whole. Rochow’s reliance on Amara is to no avail.
Rochow insists that Varity and Amara, read together, indicate that a plaintiff may obtain relief under both § 502(a)(1)(B) and § 502(a)(3) if “other appropriate equitable relief’ is necessary to make the plaintiff whole for injury caused by the wrongful denial of benefits. He argues that Varity made clear that “other appropriate equitable relief’ may be available under § 502(a)(3) when a party cannot obtain relief under § 502(a)(1)(B). Further, Amara identified a range of equitable remedies potentially available under § 502(a)(3), including surcharge.[4] Reading Varity and Amara together thus supports the notion, Rochow contends, that disgorgement of profits is available in the instant case because recovery of benefits under § 502(a)(1)(B) did not make him whole for the injury caused by LINA’s breach of fiduciary duty.
Rochow’s reading misses a logical step: “other appropriate equitable relief’ is not necessary to make him whole. While Varity certainly acknowledges the possibility of equitable relief, and Amara outlines the scope of potential equitable relief, when appropriate, the Supreme Court has never stated that recovery under both § 502(a)(3) and § 502(a)(1)(B) may be warranted for a single injury. Rochow claims two injuries — the arbitrary and capricious denial of benefits, and the breach of fiduciary duty consisting of the continued withholding of the wrongfully denied benefits. These “injuries,” however, as explained above, are indistinguishable. The Court in Varity made clear that equitable relief is not ordinarily appropriate where Congress has provided adequate relief for a claimant’s injury. The purpose behind ERISA continues to be remedial, and Rochow’s injury was remedied when he was awarded the wrongfully denied benefits and attorney’s fees — as potentially supplemented by award of prejudgment interest, still to be determined. Despite Rochow’s attempts to obtain equitable relief by repackaging the wrongful denial of benefits claim as a breach-of-fiduciary-duty claim, there is but one remediable injury and it is properly and adequately remedied under § 502(a)(1)(B). Rochow and our dissenting colleagues wholly fail to explain hoiv his § 502(a)(1)(B) remedies are inadequate to remedy his injury.
Rochow’s final argument is that even if the disgorgement relief is not available under § 502(a)(3), he is entitled to prejudgment interest under § 502(a)(1)(B), a matter the district court failed to address. We acknowledge that prejudgment interest may be awarded in an appropriate *376 case under ERISA. “Though ERISA does not address the propriety of awarding prejudgment interest, prejudgment interest may be awarded in the discretion of the district court. Awards of prejudgment interest are compensatory, not punitive, and a finding of wrongdoing by the defendant is not a prerequisite to such an award.” Tiemeyer v. Cmty. Mut. Ins. Co., 8 F.3d 1094, 1103 (6th Cir.1993), cert. denied, 511 U.S. 1005, 114 S.Ct. 1371, 128 L.Ed.2d 48 (1993) (internal quotations and citations omitted); see also Wells v. U.S. Steel, 76 F.3d 731, 737 (6th Cir.1996) (holding that district court did not abuse its discretion in awarding prejudgment interest when pension fund wrongfully withheld benefits).
Prejudgment interest cannot be awarded, however, at a rate so high that the award amounts to punitive damages:
Although prejudgment interest is typically not punitive, an excessive prejudgment interest rate would overcompensate an ERISA plaintiff, thereby transforming the award of prejudgment interest from a compensatory damage award to a punitive one in contravention of ERISA’s remedial goal of simply placing the plaintiff in the position he or she would have occupied but for the defendant’s wrongdoing.
Ford v. Uniroyal Pension Plan, 154 F.3d 613, 616 (6th Cir.1998). An interest award should “simply compensate a beneficiary for the lost interest value of money wrongfully withheld from him or her.” Rybarczyk v. TRW, Inc., 235 F.3d 975, 985 (6th Cir.2000) (quoting Ford, 154 F.3d at 618). An excessive prejudgment interest rate would “contravene ERISA’s remedial goal of simply placing the plaintiff in the position he or she would have occupied but for the defendant’s wrongdoing.” Schumacher v. AK Steel Corp. Retirement Accumulation Pension Plan, 711 F.3d 675, 686 (6th Cir.2013). Conversely, an exceedingly low award would fail to make the plaintiff whole. Id.
Rochow’s request for prejudgment interest appears to be a remedy the district court could have granted, though not at an excessive rate. In his initial complaint, Rochow requested various forms of relief, including an “[ojrder compelling Defendant to pay Plaintiff forthwith the full amount of employee benefits due him and to continue such payments for a period set forth in the Plan, including interest on all unpaid benefits.” R. 1, Compl. at 6, Page ID 6. Rochow also requested “[rjeasonable attorney fees and costs” and “[s]uch other relief as may be just and appropriate.” Id. When the case was remanded to the district court following Rochow I, the parties treated prejudgment interest as a live issue, fully briefing the issue in connection with the proceedings on equitable remedies. Yet when disgorgement of profits was ordered, the question of prejudgment interest was given no further consideration. Rochow thus prayed for such relief in his complaint and has preserved his request throughout the proceedings. The issue having been thus far been pretermitted through no fault of the parties, we remand the case once more to the district court for fresh consideration of Rochow’s entitlement to prejudgment interest.
Ill
For the reasons stated above, we VACATE the district court’s' disgorgement award under § 502(a)(3) and REMAND the case to the district court for consideration of whether and, if so, to what extent, award of prejudgment interest is warranted under § 502(a)(1)(B) to make Rochow whole. ■

. Rochow died on October 16, 2008, and the representative of his estate, Patrick Rochow, was substituted as plaintiff in this action. Later, Todd R. Rochow and John D. Rochow were substituted as administrators of Daniel Rochow’s estate and as plaintiffs in this case. For consistency, this opinion refers to all litigation actions taken on behalf of Rochow’s estate as actions by [Rochow].

. The district court’s decision is reported at Rochow v. LINA, 851 F.Supp.2d 1090 (E.D.Mich.2012).

. We assume, for present purposes, that the district court made a finding that LINA breached a fiduciary duty owed to Rochow. However, the district court's various orders are devoid of any such express finding. When the case was before the district court on the issue of whether the plan administrator arbitrarily and capriciously denied benefits, the court ruled from the bench in granting summary judgment for Rochow. The transcript of the hearing reveals no express finding of a breach of fiduciary duty. R. 19, Hearing Tr. at 24, Page ID 4095. Further, the one-page order that memorialized the district court's ruling includes the finding simply that "the denial of Plaintiff's claim was arbitrary and capricious.” R. 16, Order at 1, Page ID 105. There is no mention of a breach of fiduciary duty. The judgment order that issued the same day, apart from granting Rochow's claim for benefits wrongfully denied, "dismissed” the case. That is, the district court appeared to have dismissed the breach-of-fiduciary-duty claim as a claim pled in the alternative and rendered moot by Rochow’s success on the principal claim. R. 17, Judgment, Page ID 106.
In Rochow I, similarly, we did not address any claim for breach of fiduciary duty, or even use the terms "fiduciary,” "duty,” or "breach” in the opinion. Admittedly, one could infer from Rochow I that LINA’s fiduciary duty was alluded to in the observation that LINA's decision did not appear to have been made " 'solely in the interest of the participants and beneficiaries and [] for the exclusive purpose of [] providing benefits to participants and their beneficiaries’ as required by ERISA. 29 U.S.C. § 1104(a)(1).” See Rochow I, 482 F.3d at 866. However, no ruling on a breach-of-fiduciary-duty claim was before the court and the opinion contains no analysis of the point.
After the district court's initial decision was affirmed and the district court took up the motion for equitable accounting, however, the court rejected LINA's argument that it had not made the requisite finding of a breach of fiduciary duty to trigger the availability of equitable relief. Citing Varity, the court stated, “an arbitrary or capricious denial of benefits can count as a breach of fiduciary duty.” R. 67, Order at 4, Page ID 935. Further, when the district court set the method of accounting for the disgorgement award, it stated "it has already been determined that Defendant owed Plaintiff a duty of loyalty and breached this duty through its arbitrary and capricious denial of disability benefits to Plaintiff.” R. 113, Order at 2, Page ID 3562. The district court thus treated its finding of an arbitrary and capricious denial of benefits, in and of itself, as a breach of fiduciary duty. The district court never identified any other grounds for finding a breach of a fiduciary duty. In the district court’s ruling, it was one and the same injury that made out two distinct ERISA violations and justified both remedies.
Though we are aware of no persuasive authority for the proposition that a wrongful denial of benefits in and of itself constitutes a breach of fiduciary duty remediable under both § 502(a)(1)(B) and § 502(a)(3), we assume, without deciding, that the district court permissibly found a breach of fiduciary duty based on the administrator's arbitrary and capricious denial of benefits. The dissenting opinion suggests other ways in which LINA might be deemed to have breached a fiduciary duty, but the district court’s judgment now under review clearly includes no such ruling. Careful review of the district court rulings cited in the dissent discloses that the asserted findings of other instances of misconduct by LINA were not identified by the district court as grounds for holding that LINA breached its fiduciary duty.

. The statements made by the Supreme Court in Amara regarding the equitable remedies available to courts under § 502(a)(3) are merely dicta. The sole question before the Court in Amara was whether the district court applied the correct legal standard in determining whether CIGNA's failure to inform its employees of changes to the benefits plan caused its employees sufficient injury to warrant legal relief. Amara, 131 S.Ct. at 1871. The Court also discussed whether § 502(a)(1)(B) authorized the relief the district court awarded. In finding that § 502(a)(1)(B) was not the appropriate remedy, the Court went on to acknowledge that § 502(a)(3) authorizes forms of relief similar .to § 502(a)(1)(B). However, the Court did not decide what remedies were available, and did not conclusively decide which remedy was appropriate in the case before it. Id. at 1880.