NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0282n.06

No. 16-2090

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
May 19, 2017
DEBORAH S. HUNT, Clerk

JENNIFER STRANG,                                    )
                                                    )
        Plaintiff-Appellant,                        )
                                                    )
v.                                                  )       ON APPEAL FROM THE
                                                    )       UNITED STATES DISTRICT
FORD MOTOR COMPANY GENERAL                          )       COURT FOR THE EASTERN
RETIREMENT PLAN; FORD MOTOR                         )       DISTRICT OF MICHIGAN
COMPANY,                                            )
                                                    )
        Defendants-Appellees.                       )

BEFORE:     BOGGS, MOORE, and McKEAGUE, Circuit Judges.

BOGGS, Circuit Judge. This case is at once an easy case and a hard one. We review whether Ford's interpretation of its plan was arbitrary or capricious, the "least demanding form of judicial review." *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014) (quoting *Cozzie v. Metro. Life Ins.*, 140 F.3d 1104, 1107 (7th Cir. 1998)). The terms of this plan are relatively straightforward and any ambiguities were resolved reasonably by the plan administrator. But in the end, the case is a hard one because, due primarily to the vicissitudes of fate, a retiree who made significant efforts to exercise an option to choose a lump-sum benefit and care for his family did not meet the requirements established by the plan and thereby missed an opportunity at a much greater payout for his benefits. Yet precedent and the standard of review compel us to affirm the district court's dismissal of the breach-of-fiduciary-duty claim and grant of judgment on the administrative record to the Appellee, Ford.

I

John Strang had worked for the Ford Motor Company for over thirty-eight years and, following his retirement in 2007, was the beneficiary of a company pension. In April 2012, Ford notified Mr. Strang that "the Ford Plan would provide retiree participants with an option to take a lump sum distribution of their remaining retirement benefits beginning in August 2012."[1] In a letter sent to pensioners under Ford's General Retirement Plan, Ford explained that "a series of election periods will be held throughout 2012 and 2013. You will be assigned a specific election period based on a random process . . . . Under no circumstances will you be able to change your assigned election period." According to Appellant, Mr. Strang sought additional information from Ford's National Employee Service Center (NESC) without success. Not long afterward, at the end of July 2012, Mr. Strang was diagnosed with terminal cancer.

Appellant claims that Mr. Strang and his wife contacted NESC on several occasions between July and October 2012 to request an expedited lump-sum package containing required forms. Although the district court notes that "the earliest such communication that appears in the administrative record is a telephone call from plaintiff . . . on November 13, 2012," the record does indicate that on October 31, Jennifer Strang—Mr. Strang's wife—called to inquire when the lump-sum package would be arriving. By this time, Mr. Strang's health had begun to deteriorate rapidly. Additional phone calls followed on November 13 and 16, with Mrs. Strang informing Ford that her husband was "very ill and may not live to the end of the year" and seeking a method to expedite the lump-sum election period; she was told by Ford that "no exceptions are being made." Sometime before November 16, a postcard from Ford reached the Strangs, informing Mr. Strang that his election period would be between December 14, 2012,

---

[1] The lump-sum option was not a preexisting entitlement or contractual benefit, but was a voluntary offer by Ford as an alternative to the existing benefits then being received by retirees.

and March 13, 2013. In a phone call on November 16, Mrs. Strang requested that Ford "rush the process . . . for her husband to get [the election forms] as soon as possible." The NESC again informed her that it could not be rushed.

The Strangs sent two letters to Ford that day. The first was from Mr. Strang, who wrote that his "death may be imminent" and, as a result, he wanted Ford to have documentation that his "election to receive my retirement distribution shall be the lump sum retirement distribution." The letter was somewhat contradictory, however. While it stated that "I wish [the election choice] to be honored should I not survive," it also stated that "if I should not survive until December 14, 2012 and it is determined that making this plan election is NOT in the best interests of my spouse then she shall be empowered to make the election that is in her best interests." Mrs. Strang, who had power of attorney from Mr. Strang, also sent a letter in which she explained that Mr. Strang had been hospitalized, his prognosis was bleak, and he "wishe[d] to take the buyout." On November 18, 2012, Mr. Strang died.

On February 14, 2013, Ford sent Mrs. Strang a letter informing her that Mr. Strang had not submitted "a complete and valid election form during [his] election period" and, as he had died before his election period began, his attempt to elect a lump-sum payment was ineffective. Mrs. Strang retained the ability to take a future lump-sum payout of her survivor's benefits later in 2013, but the new offer was $463,254.78 less than the amount that the Strangs would have received had Mr. Strang's election been effective. Mrs. Strang, through her lawyer, submitted a claim to NESC on February 20, 2013, for the lump-sum benefits. The claim was "inadvertently delayed," and so with Mrs. Strang's consent the matter was treated as an appeal. On June 28, 2013, the Ford General Retirement Plan Retirement Committee (which administers the Plan) denied the appeal of the denial of lump-sum benefits on the basis that Mr. Strang's attempt to

elect the lump-sum option "did not include the required election forms and was completed prior to Mr. Strang's lump sum window election period." Furthermore, it found that "[w]hen Mr. Strang died on November 18, 2012, his eligibility for the lump sum opportunity ceased." The Committee denied Mrs. Strang's request for reconsideration on August 27, 2013.

Mrs. Strang brought suit on November 17, 2014, in the United States District Court for the Eastern District of Michigan. In her later, amended complaint, she sought penalties for failure to provide plan documents in accordance with 29 U.S.C. § 1132(c)(1)(B), equitable relief to reform the retirement plan and restitution pursuant to 29 U.S.C. § 1132(a)(3), and an award of unpaid lump-sum benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). The district court granted Ford's motion to dismiss in part, dismissing the equitable claims on the basis that reformation was unavailable and restitution could not be sought where it would duplicate the relief available under another ERISA section. Mrs. Strang later withdrew the § 1132(c)(1)(B) claim. After both parties filed motions for judgment on the administrative record, the district court granted Ford's motion for judgment on the administrative record, holding that the plan administrator's decision to deny the lump-sum benefit was not arbitrary or capricious. Mrs. Strang timely appealed.

II

A. Denial-of-Benefits Claim

We generally review de novo a district court's judgment on the administrative record regarding an ERISA denial of benefits. *Shelby Cty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 367–68 (6th Cir. 2009). But where the plan gives the plan administrator discretionary authority to determine eligibility or construe terms of the plan, we review the denial of benefits "only to determine if it was 'arbitrary and capricious.'" *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 456 (6th Cir. 2003) (quoting *Miller v. Metro. Life Ins.*, 925 F.2d

979, 983 (6th Cir. 1991)); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "Decisions of the administrator or fiduciary must be upheld, under the latter standard, if 'rational in light of the plan's provisions.'" *Borda v. Hardy, Lewis, Pollard & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998) (quoting *Miller*, 925 F.2d at 983). In this case, it is clear that the plan vests (and did vest at the time of decision) the Committee with "discretionary authority to administer the benefit structure of the Plan" and the power to "construe and interpret the Plan."

> The plan explains that:
>
> Any Lump Sum Window Eligible Member shall be entitled to make an election under the Lump Sum Window effective as of their Lump Sum Window Qualified Retirement Date [i.e., a date designated for the Member]. Any Lump Sum Window Eligible Member who wishes to make an election under the Lump Sum Window must submit to the Company a completed and signed election form, in such manner as may be required by the Committee. . . .
> . . .
> An election under the Lump Sum Window shall not be effective unless a completed and signed election form is received by the Company before the expiration of the Lump Sum Window Election Period.

The term "Lump Sum Window Election Period" is further defined as "a consideration period of not less than 60 days and no more than 90 days assigned to a Lump Sum Window Eligible Member." It is plain in this case that the period assigned to Mr. Strang was from December 14, 2012, to March 13, 2013.

Ford denied the lump-sum amount for two reasons: Mr. Strang "died prior to his assigned Lump Sum Window Election Period" and "a proper election form was not submitted." Appellant argues that Ford was arbitrary and capricious in a number of ways, which we address in turn. First, Appellant argues that Ford was required to "furnish Mr. Strang with the means to" elect the lump-sum option when Mr. Strang requested them early. Second, she asserts that there is no reason why a retiree who dies prior to the assigned election period should be considered ineligible. Third, she contends that once Ford had all of the information it needed, it should have

considered the election within the appropriate period and permitted it then. Finally, she claims that the assignment of the election period beginning in December was discriminatory because of Mr. Strang's terminal illness.

It is clear that submission of a "completed and signed election form, in such a manner as may be required by the Committee" was a prerequisite to choosing the lump-sum option. The election form was in fact provided to the Strangs on November 30, 2012. Thus, the core of Appellant's first claim is that the Strangs' requests for the forms earlier should have been honored. But there is nothing in the plan to suggest that the forms could be demanded before the election period, and Ford sent the form two weeks before Mr. Strang's election period began. It was not, then, irrational, arbitrary, or capricious to send the forms only in the weeks before the election period began.

Appellant contends, however, that the submission of Mr. Strang's letter in November should have sufficed to indicate his election, as it provided all the necessary information. Under this theory, once December 14, 2012, arrived, Ford should have determined that Mr. Strang had elected the lump-sum option and paid Mrs. Strang the money. But there are two problems with that reading. First, the plan clearly demarcates a fixed period for a retiree to elect an option. By describing a "Lump Sum Window Election Period" with a fixed length of "no more than 90 days" assigned to members, the plan contemplates that elections must take place within the period to be effective. Here, that period was from December 14, 2012, to March 13, 2013. Thus, it is reasonable that the period could begin no earlier than December 14 (else, the consideration period would be longer than ninety days), and Mr. Strang was not entitled to make an election before that date. Accordingly, while the district court was right to observe that there is no provision explicitly requiring that a member make an election no earlier than the election

period, an interpretation limiting the effectiveness of elections to that period is certainly "rational in light of the plan's provisions." *Miller*, 925 F.2d at 983.

Second, the letter was not the proper form, nor was it in truth really an election at all. Appellant argues that Mr. Strang's November 16 letter demonstrates his election, but it is equivocal at best. The letter contains strong language indicating that Mr. Strang wanted to elect the lump-sum option, but later contains language that purports to permit his wife to make an election choice if his choice were not in her best interests. While the letter gave some indications of how such best interests could be determined—indications that were explicitly left open-ended—the letter's decision leaves its determination so far open to further decisionmaking that it is not an election at all. Thus, it was not arbitrary or capricious to find that the letter was insufficient to constitute a proper election by Mr. Strang.

Furthermore, once Mr. Strang died on November 18, his wife was unable to elect for him. Even though Mrs. Strang had power of attorney from her husband, "a power of attorney, though irrevocable during the life of the party, becomes extinct by his death." *Hunt v. Rousmanier's Adm'rs*, 21 U.S. 174, 202 (8 Wheat. 1823). What was required was that Mr. Strang or someone with power of attorney over him make the election during the period and do so by submitting "a completed and signed election form." The letter was not in the form required by the plan, nor were the appropriate forms filled out and submitted by Mr. Strang. True, he could not fill out the forms because he did not have them, but as noted above there was no obligation to send them far in advance of the election period. Reading the plan as requiring a particular signed election form "as may be required by the Committee" is not arbitrary or capricious.

Appellant claims that there is no reason why a retiree who dies prior to the assigned election period should be considered ineligible to receive lump-sum benefits. Ford responds that

the plan requires that the "Lump Sum Window Eligible Member . . . submit" the election form, which is not possible after the member's death. Given that no power of attorney exists after death and Mr. Strang did not submit the form, Ford is correct to note that Mr. Strang did not comply with the terms of the plan. Such an interpretation is not arbitrary or capricious.

Finally, Appellant argues that providing a December window was discriminatory against a retiree who was likely to die before reaching the election period. But Mr. Strang's period was assigned randomly. To say that Ford had an obligation to move up the dates for anyone who claimed that their claim was urgent would have required an entirely new claim system. As the district court properly noted, "Defendants' adherence to a system whereby election periods were randomly assigned based on Social Security numbers is neither unfair nor discriminatory, but ensure[d] orderly and even-handed administration of the plan."

In sum, Ford's interpretation of the plan to include a fixed period during which the eligible member was required to submit specific election forms was "rational in light of the plan's provisions." *Miller*, 925 F.2d at 983. It is true that the facts here present a tragic case of the sometimes difficult nature of hard-line rules, but there is nothing in the plan that prevents Ford from keeping its structured plan intact so that it could provide an orderly system for the many other retirees that may have wished to elect their own lump-sum option. The interpretation was not arbitrary or capricious, and we affirm the district court holding.

## B. Breach-of-Fiduciary-Duty Claim

Appellant also argues that the district court erred in dismissing its breach-of-fiduciary claim, as it should have been permitted as an alternative ground for relief. Not so. We held in *Rochow v. Life Insurance Co.*, 780 F.3d 364 (6th Cir. 2015) (en banc), that:

> [a] claimant can pursue a breach-of-fiduciary-duty claim under [29 U.S.C.
> § 1132(a)(3)], irrespective of the degree of success obtained on a claim for

> recovery of benefits under [§ 1132(a)(1)(B)], only where the breach of fiduciary duty claim is based on an *injury* separate and distinct from the denial of benefits or where the remedy afforded by Congress under [§ 1132(a)(1)(B)] is otherwise shown to be inadequate.

*Id.* at 372. Here, the injury for the breach of fiduciary duty and for the denial of benefits is one and the same. Appellant contends that Ford's withholding of the election forms and failure to consider Mr. Strang's letter a proper election were both a breach of fiduciary duty and a denial of benefits. Perhaps recognizing this, Appellant argues that "[*Rochow*'s] focus is on prohibiting duplicative relief, not alternative pleading." But *Rochow* also noted that in the previous case of *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998), this Circuit had stated:

> [b]ecause [§ 1132(a)(1)(B)] provides a remedy for [the plaintiff's] alleged injury that allows him to bring a lawsuit to challenge the Plan Administrator's denial of benefits to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to [§ 1132(a)(3)].

*Rochow*, 780 F.3d at 372 (quoting *Wilkins*, 150 F.3d at 615). In *Wilkins* the plaintiff was unsuccessful in seeking the denial-of-benefits remedy, but was still precluded from bringing the breach-of-fiduciary-duty claim. *Wilkins* and *Rochow* demonstrate that where an avenue of relief for the injury was available under § 1132(a)(1)(B), "*irrespective of the degree of success obtained*," a breach-of-fiduciary-duty claim cannot be brought. *Rochow*, 780 F.3d at 372 (emphasis added). The only exception to this rule is, as noted above, where the injury is different or it would not be adequately remedied under § 1132(a)(1)(B). Appellant has not shown that the injury is different or that the remedy, were she successful, would be inadequate. "[T]he only asserted injury to [Strang] is the denial of benefits and withholding of the same benefits. These are not distinct injuries; they are one and the same injury." *Id.* at 373. And the remedy sought is the same: the $463,254.78 difference between what Appellant received and

what she would have received had Mr. Strang's election been effective. Accordingly, we affirm the district court's dismissal of the breach-of-fiduciary-duty claim.

III

For the foregoing reasons, we **AFFIRM** the district court's dismissal of the breach-of-fiduciary-duty claim and grant of judgment on the administrative record to Ford.