**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| GEOFFREY MOYLE, an individual, on behalf of themselves; PAULINE ARWOOD, an individual, on behalf of themselves; THOMAS ROLLASON, an individual, on behalf of themselves; JEANNIE SANDERS, an individual, on behalf of themselves, <br><br> *Plaintiffs-Appellants/ Cross-Appellees*, <br><br> v. <br><br> LIBERTY MUTUAL RETIREMENT BENEFIT PLAN; LIBERTY MUTUAL RETIREMENT PLAN RETIREMENT BOARD; LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts company; LIBERTY MUTUAL INSURANCE GROUP INC., a Massachusetts company, <br><br> *Defendants-Appellees/ Cross-Appellants*. | Nos. 13-56330 <br> 13-56412 <br><br> D.C. No. 3:10-cv-02179-GPC-MDD <br><br><br> ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Southern District of California
Gonzalo P. Curiel, District Judge, Presiding

Argued and Submitted October 19, 2015
Pasadena, California

Filed May 20, 2016
Amended August 18, 2016

Before: Harry Pregerson and Consuelo M. Callahan,
Circuit Judges and Stanley Allen Bastian,[*] District Judge.

Order;
Opinion by Judge Pregerson

## SUMMARY[**]

### Employee Retirement Income Security Act

The panel affirmed in part and reversed in part the district court's summary judgment in favor of the defendants in a class action under the Employee Retirement Income Security Act.

Plaintiffs alleged that their new employer, which purchased their former employer, told them that they would receive past service credit, under the new employer's

---

[*] The Honorable Stanley Allen Bastian, District Judge for the U.S. District Court for the Eastern District of Washington, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

retirement plan, for the time they worked with the former employer.

The panel affirmed the district court's summary judgment on a claim for benefits under 29 U.S.C. § 1132(a)(1)(B).  The panel held that the district court applied the correct abuse of discretion standard of review, and the plaintiffs were not entitled to past service credit under the plain terms of the retirement plan.

The panel reversed the district court's summary judgment on plaintiffs' claim for equitable relief under § 1132(a)(3). Agreeing with the Eighth Circuit, the panel held that the plaintiffs were not barred from bringing simultaneous claims under § 1132(a)(1)(B) and § 1132(a)(3).  Courts have interpreted *Varity Corp. v. Howe*, 516 U.S. 489 (1996), to mean that equitable relief under § 1132(a)(3) is not available if § 1132(a)(1)(B) provides an adequate remedy.  But under *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011), § 1132(a)(3) authorizes equitable relief in the form of plan reformation, even if plaintiffs also claim relief under § 1132(a)(1)(B).  The panel concluded that in light of *Amara*, prior Ninth Circuit case law to the contrary was no longer binding.  The panel remanded for determinations of fact and equitable relief in the form of reformation and surcharge.

The panel affirmed the district court's summary judgment on a claim that the new employer breached its fiduciary duty to disclose information about past service retirement credit in its Summary Plan Description.  The panel held that the plaintiffs did not prove harm or detrimental reliance.

On defendants' cross-appeal, the panel held that class certification was proper.

## COUNSEL

Matthew Butler (argued) and Michael Olinik, The Butler Firm, San Diego, California; Jack Winters Jr., Winters & Associates, San Diego, California; Craig Nicholas and Alex Tomasevic, Nicholas & Tomasevic, LLP, San Diego, California, for Plaintiffs-Appellants/Cross-Appellees.

Ashley Abel (argued), Jackson Lewis P.C., Greenville, South Carolina, for Defendants-Appellees/Cross-Appellants.

## ORDER

The Opinion filed on May 20, 2016, is amended as follows: in the last sentence on page 5 of the Slip Opinion, the words "that the suit is not time-barred and" shall be deleted so that the sentence reads, "We also find that class certification was proper."

Judges Pregerson, Callahan, and Bastian have voted to deny Defendants-Appellees' petition for panel rehearing. Judge Callahan has voted to deny Defendants-Appellees' petition for rehearing en banc, and Judges Pregerson and Bastian so recommend.

The full court has been advised of the petition, and no judge of the court has requested a vote on the petition for rehearing en banc. Fed. R. App. P. 35. Defendants-Appellees' Petition for Rehearing or Rehearing En Banc is therefore **DENIED**, and no further petitions for rehearing will be accepted.

**OPINION**

PREGERSON, Circuit Judge:

Appellants are former employees of Old Golden Eagle Insurance Company ("Golden Eagle"). Golden Eagle did not offer a retirement plan to its employees. When Liberty Mutual Insurance Company ("Liberty Mutual") purchased Golden Eagle through a conservatorship sale, Appellants became employees of Liberty Mutual. Appellants state that while the sale was underway, Liberty Mutual told Appellants that they would receive past service credit for the time they worked with Golden Eagle under Liberty Mutual's retirement plan. But, after Liberty Mutual purchased Golden Eagle, Liberty Mutual denied Appellants' claims for past service credit. Liberty Mutual argues that it never made any representation to Appellants that they would receive past service credit for their time with Golden Eagle. Liberty Mutual also argues that under the terms of the retirement plan, Appellants are entitled only to past service credit for purposes of eligibility, vesting, early retirement, and spousal benefits, and not for retirement benefits accrual.

Appellants filed this class action against Liberty Mutual for violating the Employee Retirement Income Security Act ("ERISA"). At the district court, Appellants asserted four claims for relief: (1) Appellants are entitled to past service credit under the terms of the retirement plan, under 29 U.S.C. § 1132(a)(1)(B); (2) Appellants are entitled to equitable relief under 29 U.S.C. § 1132(a)(3); (3) Liberty Mutual violated its duty to provide Appellants with documents relevant to their claim; and (4) Liberty Mutual violated its duty to disclose information about past service retirement credit in its Summary Plan Descriptions. Appellants seek the equitable

remedies of reformation and surcharge for both claims (2) and (4).

The district court granted summary judgment in favor of Liberty Mutual on all four claims.  Appellants appealed on claims (1), (2), and (4).  Liberty Mutual cross-appealed, alleging that Appellants' suit is time-barred and that class certification was improper.

We reverse the district court's ruling as to claim (2). Appellants can seek equitable relief under 29 U.S.C. § 1132(a)(3).  We affirm the district court's ruling as to claims (1) and (4): Appellants are not entitled to past service credit under the plain terms of the retirement plan, and Appellants did not rely to their detriment on Liberty Mutual's failure to disclose information about past service credit in its Summary Plan Descriptions.  We also find that class certification was proper.

## FACTUAL BACKGROUND

### I.  Liberty Mutual's Bid for Golden Eagle

On January 31, 1997, the California Department of Insurance placed Golden Eagle into conservatorship with the San Diego Superior Court.  Seeing an opportunity to expand its insurance business, Liberty Mutual took an immediate interest in acquiring Golden Eagle, who had a large worker's compensation business.

However, many Golden Eagle employees—worried that their jobs were in jeopardy—began to look for different employment opportunities.  From January 1997 to the summer of that year, nearly fifty percent of Golden Eagle

employees left the company, and their departure had already cost Golden Eagle about a half million dollars.

In April 1997, Liberty Mutual was in a bidding war with American International Group, Inc. ("AIG") for the acquisition of Golden Eagle. To win the bidding war, Liberty Mutual needed to not only match AIG's bid, it also needed to add enhancements to secure the Conservation Court's approval. On April 6, 1997, Liberty Mutual submitted its enhanced bid, which included improved employee benefits such as a retirement plan, a benefit not offered by Golden Eagle. Including improved employee benefits for Golden Eagle's former employees served to benefit Liberty Mutual in two ways: by retaining Golden Eagle's employees, and by increasing the likelihood that the court would approve Liberty Mutual's bid.

While the bid was going on, several Golden Eagle employees approached George Kaerth, Senior Vice President of Underwriting at Golden Eagle, and asked him if they would get past service credit for their time with Golden Eagle under Liberty Mutual's retirement benefits program. Kaerth, in turn, had about twenty conversations with David Long from Liberty Mutual, and about ten to twelve conversations with Tim Sweeney, also from Liberty Mutual, about the Liberty Mutual benefits package for Appellants. Kaerth repeatedly told Long and Sweeney that the Golden Eagle employees were confused about past service credit. Kaerth asked Long and Sweeney pointedly whether or not service with Golden Eagle would count under the Liberty Mutual benefits program, and, every time, Long and Sweeney separately responded that this issue was still under negotiation.

On May 29, 1997, the Conservation Court held an evidentiary hearing to evaluate Liberty Mutual's and AIG's competing bids. Among the exhibits that Liberty Mutual submitted to the court, one exhibit expressly stated that the value that Liberty Mutual added was to "increase employee benefits (credit for prior year's of service and participation in the benefits plan)." Liberty Mutual also told the Conservation Court that Golden Eagle employees would have the rights that Liberty Mutual employees had with "X years of service." This representation was later repeatedly made to Golden Eagle employees.[1]

Liberty Mutual's representations at the May 29 hearing were shared with Golden Eagle employees. At the time of the hearing, Golden Eagle employees preferred Liberty Mutual's proposal because it was perceived that Liberty Mutual would treat its employees better than AIG. On May 30, 1997, the Conservation Court approved Liberty Mutual's bid.

## II. Golden Eagle Transitions to Liberty Mutual

Following the approval of Liberty Mutual's bid, Liberty Mutual drafted a Rehabilitation Agreement, which was meant to settle any outstanding claims with policyholders, creditors, and shareholders of Golden Eagle. Notably, Article 5 of the Rehabilitation Agreement states that Golden Eagle employees' past service credit would count for the purposes of eligibility, vesting, and early retirement subsidies under Liberty Mutual's retirement benefit plan, but past service

---

[1] Brian Chambers, Vice President of Premium Auditing at Golden Eagle, testified at his deposition: "[W]e understood that prior years service would be covered, that if you were ten years with Golden Eagle, then you would still register like ten years with the new company."

credit would not be credited for the purpose of benefits accrual. The Rehabilitation Agreement is the only document that explicitly states that past service credit with Golden Eagle would not count for benefits accrual, and this language does not appear anywhere else during the time of transition or in any of the communications with Golden Eagle employees.

Helen Sayles, Liberty Mutual's Senior Vice President of Human Resources and Administration, oversaw the development of Article 5 as well as all Summary Plan Descriptions ("SPD")[2]. Sayles testified that it was "important to be explicit at each agreement, including this one, what people got and what people didn't get."

The Conservator in charge of the transition of Golden Eagle to Liberty Mutual was not required to send notification of the Rehabilitation Agreement to Golden Eagle employees. Liberty Mutual never provided a copy of the Rehabilitation Agreement to Golden Eagle employees.

During August 1997, Liberty Mutual hosted a series of benefits enrollment meetings so that Golden Eagle employees could discuss and obtain information about the transition to Liberty Mutual. Liberty Mutual developed a uniform "Facilitator Guide" that presenters used as a script at these meetings to convey information about the terms and conditions of employee benefits, including retirement benefits. There was no mention in the Facilitator Guide that

---

[2] Summary Plan Descriptions are summaries of the material provisions of a retirement benefits plan, outlining the rights and obligations of plan participants and beneficiaries. Under ERISA, plan administrators are required to provide regular Summary Plan Descriptions to participants. *See* 29 U.S.C. § 1022.

past service credit with Golden Eagle would not be credited for benefit accrual, or that benefit accrual would begin on the plan entry date of October 1, 1997.

During the enrollment meetings, Liberty Mutual failed to indicate that there were any limitations to the treatment of past service credit. Paula Tonsky, who organized new hire orientations, testified that her understanding from attending some of these meetings was that "previous years with Golden Eagle would count towards . . . service with Liberty Mutual."

Golden Eagle employees Geoffrey Moyle, Pauline Arwood, Thomas Rollason, and Jeannie Sanders also testified that this was their understanding after attending the meetings, as well as the understanding of other Golden Eagle employees. When asked if his understanding was that he would get past service credit for his time with Golden Eagle for all purposes under the Liberty Mutual retirement plan, Moyle stated, "I know that was my understanding, because everybody was quite happy after the meeting, that [sic] what they were going to receive." Similarly, Sanders testified, "[B]ecause of the meeting . . . we all were told that our years of service with Golden Eagle would be counted towards our retirement benefit, meaning that our check we would receive, the money, the years we worked for Golden Eagle, would be calculated for that."

Arwood testified that the question of past service credit was asked at least three times during one meeting. She then stated, "[W]e specifically asked and were told that our prior years with Golden Eagle would apply to our retirement plan, which we were all very excited about, because some of us were getting ready to retire in a few years . . . I mean, everybody was there. Basically, . . . that was the impression

we were given.  That is why everybody stayed with the company."

Rollason testified that Mike Plavnicky from Liberty Mutual told Golden Eagle employees during an enrollment meeting that "[y]ou accrue, this, that." Rollason went on to state, "Plavnicky came out and said, yes, you will get pension, pension for your Golden Eagle time through Liberty Mutual.  He said it point blank range." Rollason testified that he was looking for another job at that time: "[T]hen they said that we would get the benefit—the pension and I said, well, at my age . . . I will just stay here then."

Also during the enrollment period, Golden Eagle employees had two information documents available to them: the operative 1987 Plan ("87 Plan") and the Summary Plan Descriptions.  The 87 Plan, however, did not address past service credit or any credit for vesting, eligibility, or participation.  Similarly, the Summary Plan Description, which was dated 1996, did not address past service credit.

## III.     Golden Eagle Formally Becomes Part of Liberty Mutual

On October 1, 1997, Liberty Mutual officially acquired Golden Eagle and formed Golden Eagle Insurance Company, a subsidiary of Liberty Mutual.  Golden Eagle employees who stayed on were now Liberty Mutual employees.  For the next four years, Liberty Mutual did not amend the 87 Plan to address past service credit. Liberty Mutual's Summary Plan Descriptions from 1997 to 2001 also did not address past service credit.

In 2001, Liberty Mutual finally amended the Liberty Mutual Retirement Benefit Plan ("the Retirement Plan") to include provisions that specifically addressed Golden Eagle employees.  The Summary Plan Description dated 2002 also addressed Golden Eagle employees.  Both the Retirement Plan and the 2002 Summary Plan Description stated that past service credit for Golden Eagle employees would be "credited for eligibility, vesting, early retirement, and spouse's benefits . . . ;" in 2009, the word "solely" was added to this clause.

Between 2002 and 2006, the Liberty Mutual Retirement Benefit Plan Retirement Board ("Liberty Mutual Board"), the Retirement Plan's administrator, denied the claims of almost a dozen former Golden Eagle employees who sought past service credit, including the claims of Moyle, Arwood, Rollason, and Sanders. Liberty Mutual's justification for the denials was that it had informed former Golden Eagle employees about when past service credit applied and therefore, former Golden Eagle employees should have known when past service credit did not apply.

## PROCEDURAL BACKGROUND

On March 14, 2005, Moyle filed an action against Golden Eagle Insurance Company and Liberty Mutual in district court, seeking benefits payment for his past service credit with Golden Eagle.  Moyle amended the complaint on August 23, 2005 to include the Retirement Plan as a defendant.  On November 14, 2005, the district court granted the defendants' motion to dismiss for failure to exhaust administrative remedies.  Moyle appealed and this court affirmed the district court's dismissal on August 23, 2007.

On January 26, 2008, Moyle filed a claim with Liberty Mutual.  On July 18, 2008, Rollason filed a claim; on August 21, 2008, Arwood filed a claim; and on December 4, 2008, Sanders filed a claim.  John R. St. Martin, Liberty Mutual's Manager of Pension, Savings, and Benefits, denied Moyle's claim on April 23, 2008, and subsequently denied the claims of Rollason, Arwood, and Sanders.

Moyle, Rollason, Arwood, and Sanders consolidated their claims and sought administrative review with Liberty Mutual. On October 23, 2009, Helen Sayles, Senior Vice President of Human Resources and Administration, denied Appellants' appeal on behalf of the Liberty Mutual Board.

On October 19, 2010, Moyle, Rollason, Arwood, and Sanders filed the instant class action complaint against the Retirement Plan, the Liberty Mutual Board, Liberty Mutual Group, Inc., and Liberty Mutual (*collectively*, "Liberty Mutual") for violations of ERISA.  The district court granted Appellants' motion for class certification on April 10, 2012. On April 24, 2012, Liberty Mutual filed a petition with this court for permission to appeal the district court's order granting class certification.   This court denied Liberty Mutual's petition for permission to appeal on July 11, 2012.

On October 12, 2012, Appellants filed a third amended complaint which alleged the following four causes of action: (1) payment of benefits under the Retirement Plan pursuant to 29 U.S.C. § 1132(a)(1)(B); (2) equitable remedies under 29 U.S.C. §1132(a)(3); (3) civil penalties for failure to provide documents under § 29 C.F.R. § 2560.503-1(h)(2)(iii); and (4) failure to meet the requirements for Summary Retirement Plan Descriptions as required by 29 C.F.R. § 2520.102-3(l) and 29 C.F.R. § 2520.102-2(a).    The

equitable remedies that Appellants seek under claims two and four are reformation and surcharge.

On July 1, 2013, the district court granted Liberty Mutual's motions for summary judgment on all four claims and denied all of Appellants' motions for summary judgment. On July 30, 2013, Appellants timely filed a notice of appeal in this court. Liberty Mutual filed their notice of cross-appeal on August 13, 2013, arguing that Appellants' § 1132(a)(1)(B) claims are barred by the statute of limitations and the doctrine of laches, and that class certification was not proper.

## DISCUSSION

**I.   Appellants Cannot Receive Benefits for Past Service Credit with Golden Eagle under the Terms of the Retirement Plan.**

*A.   The District Court Applied the Correct Standard of Review.*

Under 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought "by a participant, beneficiary, or fiduciary [] to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Denials of benefits under this provision are "to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone v. Bruch*, 489 U.S. 101, 115 (1989).

If the administrator or fiduciary who is given discretionary authority operates under a conflict of interest,

"that conflict must be weighed as a facto[r] in determining whether there is an abuse of discretion." *Id.*[3] (citing Restatement (Second) of Trusts § 187, Comment *d* (1959)) (internal quotations omitted). *De novo* review applies in instances where the administrator has a serious conflict of interest that the beneficiary can demonstrate with "material, probative evidence, beyond the mere fact of an apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary." *Gatti v. Reliance Standard Life Ins. Co.*, 415 F.3d 978, 985 (9th Cir. 2005) (quotation marks omitted). The administrator must have engaged in "wholesale and flagrant violation[] of the procedural requirements of ERISA and thus act[] in utter disregard of the underlying purpose of the plan as well." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 971 (9th Cir. 2006).

Both parties agree that the Retirement Plan gives the Liberty Mutual Board, as administrator, discretion to interpret the Retirement Plan. However, Appellants argue that there is a structural conflict of interest because of the close connection between Liberty Mutual, who funds the Retirement Plan, and the Liberty Mutual Board, who acts as administrator of the Retirement Plan. Sayles, who approved St. Martin's denial of Appellants' initial claims for benefits, was both Director of Human Resources for Liberty Mutual and a member of the Liberty Mutual Board of Directors. Appellants argue that St. Martin and Sayles were involved with the 1997 Benefit Enrollment meetings and drafted plan

---

[3] The Supreme Court explicitly stated, "We express no view as to the appropriate standard of review for actions under other remedial provisions of ERISA." *Firestone*, 489 U.S. at 108. We thus apply this standard only to § 1132(a)(1)(B).

documents, including the Summary Plan Descriptions and Facilitator Guide. Appellants contend that St. Martin and Sayles were essentially relying on their own communications when deciding to deny Appellants' claims, and this conflict of interest served as a bias against Appellants. Appellants argue that for these reasons, *de novo* review applies.

The district court found that Appellants did not provide specific evidence to show that a sufficiently serious structural conflict of interest existed as to warrant *de novo* review. The district court, however, did find that a conflict of interest existed based on the significant overlap between the employees who worked for both Liberty Mutual and the Liberty Mutual Board, and thus reviewed the record for an abuse of discretion, weighing the conflict of interest as a factor.

The district court's abuse of discretion standard of review is correct. Appellants failed to provide "material, probative evidence" that the Liberty Mutual Board engaged in "wholesale and flagrant violations of the procedural requirements of ERISA." *Gatti*, 415 F.3d at 985; *Abatie*, 458 F.3d at 971. Additionally, Sayles testified that she had never obtained a report that analyzed the actuarial soundness of the Retirement Plan if Golden Eagle employees were given past service credit for the purpose of benefits accrual.[4] Absent this information, it is difficult to prove that Sayles was motivated by the self-interest of the fiduciary when she denied Appellants' initial claims.

---

[4] *See also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443–46 (1999) (holding that certain amendments to pension plans do not trigger fiduciary duties, as long as the plan is actuarially sound).

## B. Liberty Mutual's Interpretation of the Retirement Plan Was Reasonable.

Under the abuse of discretion standard, an administrator's denial of benefits must be upheld "if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith." *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1113 (9th Cir. 2000). The analysis is not based on "whose interpretation of the plan documents is most persuasive, but whether the [adminstrator's] interpretation is unreasonable." *Canseco v. Constr. Laborers Pension Tr.*, 93 F.3d 600, 606 (9th Cir. 1996) (internal quotation marks omitted). The court must "look to the plain language of the [Retirement Plan] to determine whether the [administrator's] interpretation of that plan is 'arbitrary and capricious.'" *Id.* In the instant case, the abuse of discretion standard will be applied with the conflict of interest being weighed as a factor in determining whether the Liberty Mutual Board abused its discretion. *Abatie*, 458 F.3d at 965.

Article 3 of the Retirement Plan lays out the various formulas for calculating accrued benefits under the normal retirement benefit. The formulas are based on a plan participant's "years of credited service." According to the relevant parts of Article 1.69(c) of the Retirement Plan, "year of credited service" for full-time employees means "the period of the Participant's service with the Employer following his Entry Date . . . . [T]he following periods of time shall not be included in determining Years of Credited Service and fractional Years of Credited Service: . . . any period of time during which an Employee is not an Eligible Employee." "Entry date" is defined as "the first day of each calendar month." Article 1.25 of the Retirement Plan. "Eligible Employee" includes "any Employee who . . . is

employed by a Participating Employer." Article 1.19 of the Retirement Plan. "Participating Employer" means "any other Affiliated Employer which adopts the Plan with the approval of [Liberty Mutual]." Article 1.50 of the Retirement Plan.

Under Article 1.4 of the Retirement Plan, "Affiliated Employer" means "any corporation, trust, association or enterprise (other than [Liberty Mutual]) which is (a) required to be considered, together with [Liberty Mutual], as one employer pursuant to the provisions of Sections 414(b), 414(c), 414(m), or 414(o) of the Code; or (b) which is designated an Affiliated Employer by [Liberty Mutual]." With regard to an affiliated employer, Article 2.16 of the Retirement Plan also states:

> (a) *General*. An individual's employment service with an employer prior to the date such employer becomes an Affiliated Employer shall not be considered employment service with the Employer under this Plan, unless otherwise provided by the Board of Directors, or unless otherwise required by Department of Labor or Treasury regulations. Similarly, an individual's employment service with an employer who is not an Affiliated Employer, or who ceases to be an Affiliated Employer, shall not be considered employment service with the Employer under this Plan, unless otherwise provided by the Board of Directors, or unless otherwise required by Department of Labor or Treasury regulations. Notwithstanding the following:
>
> . . . .

(d) *Golden Eagle*.  The following special rule applies to former employees of [Golden Eagle] who became employed by the Golden Eagle Insurance Corporation, a wholly owned subsidiary of the Company, on October 1, 1997, as a result of the acquisition by the Company of the assets of [Golden Eagle].  For purposes of applying the eligibility and participation provisions of Article 2 and the vesting provisions of Article 6, and for determining eligibility for early retirement benefits under Section 4.1 and Spouse's death benefit under Section 7.3, such employees' prior employment service with [Golden Eagle] shall be considered employment service with the Employer under this Plan.

The Liberty Mutual Board, as administrator, found that under these provisions, Golden Eagle was never a Participating Employer prior to October 1, 1997.  Therefore, Appellants were not Eligible Employees prior to October 1, 1997 and the time that they were employed by Golden Eagle did not count as Years of Credited Service for the purposes of calculating accrued benefits under Article 1.69(c).  For these reasons, the Liberty Mutual Board denied Appellants' claims for benefits.  Liberty Mutual also contends that Article 2.16(d), which addresses Golden Eagle employees' prior employment service, specifically enumerates eligibility, vesting, early retirement, and spousal benefits; it does not mention benefits accrual or Article 3 of the Retirement Plan.

Applying the abuse of discretion standard while weighing the conflict of interest as a factor, the district court correctly found that the Liberty Mutual Board did not construe the

terms of the Retirement Plan in an arbitrary and capricious manner. Under the plain language of the Retirement Plan, it is not unreasonable to read the relevant provisions as excluding service time with Golden Eagle from benefits accrual. In particular, Article 2.16(d) pointedly contemplates what past service credit with Golden Eagle would count toward and suggests that it would be considered employment service with Liberty Mutual *only* for the purposes of eligibility, vesting, early retirement and spousal benefits. Our analysis is based on whether the Liberty Mutual Board's reading of the Retirement Plan was reasonable, and not on which party's interpretation is more persuasive, and we find such an interpretation to be reasonable.[5] *Canseco*, 93 F.3d at 606.

## II. Appellants Are Not Barred from Bringing Simultaneous Claims Under 29 U.S.C. § 1132(a)(3) and 29 U.S.C. § 1132(a)(1)(B).

### A. *The* Varity *Rule*

Under 29 U.S.C. § 1132(a)(3), a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or

---

[5] Because we affirm summary judgment in favor of Liberty Mutual's § 1132(a)(1)(B) argument on the merits, the statute of limitations and laches claims are moot. We decline to address Liberty Mutual's argument that the statute of repose in 29 U.S.C. § 1113 acts to bar some of Appellants' claims under 29 U.S.C. § 1132(a)(3). The district court may consider such arguments on remand.

(ii) to enforce any provisions of this subchapter or the terms of the plan."

In *Varity Corp. v. Howe*, the Supreme Court described § 1132(a)(3) as a "'catchall' provision[] [that] act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." 516 U.S. 489, 512 (1996). Courts have subsequently interpreted *Varity* to mean that equitable relief under § 1132(a)(3) is not available if § 1132(a)(1)(B) provides an adequate remedy. *See, e.g.*, *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 371–72 (6th Cir. 2015); *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 106 (4th Cir. 2006); *Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1197 (8th Cir. 1998).

### B. *Equitable Relief After* Amara

In *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1879–80 (2011), the Supreme Court held that § 1132(a)(3) authorized equitable relief in the form of plan reformation, even though plaintiffs also claimed relief under § 1132(a)(1)(B). In *Amara*, employees filed a class action suit against their employer after the employer significantly changed the terms of their pension plan. The employees alleged that their employer did not provide adequate notice of the new plan as required by ERISA. The Supreme Court found that although the employer did violate its disclosure obligations, § 1132(a)(1)(B) could not authorize relief for the employees in the form of plan reformation. *Id.* at 1876–78. The *Amara* court held that § 1132(a)(1)(B) could only authorize the enforcement of the terms of the plan, it could not change the terms of the plan. *Id.* at 1876–77.

The Court, nonetheless, held that plan reformation was available under § 1132(a)(3) as an equitable remedy, stating that the power to reform contracts is a traditional power of an equity court. *Id.* at 1879–80. Therefore, once the plan was reformed under § 1132(a)(3) to reflect the terms of the old plan, it could be enforced under § 1132(a)(1)(B). The fact that this relief takes a monetary form does not remove it from the category of equitable relief. *Id.* at 1880.

Appellants argue that *Amara* authorizes them to seek relief under § 1132(a)(3) despite their alternative claim under § 1132(a)(1)(B). The district court granted summary judgment against Appellants, stating that the plaintiffs in *Amara* did not have a remedy under § 1132(a)(1)(B) and that *Amara* did not address whether equitable relief was available under § 1132(a)(3) if § 1132(a)(1)(B) provided an adequate remedy. The district court concluded that Appellants' claim for surcharge, estoppel, and restitution were, in essence, monetary relief "couched in terms of equitable of relief" and therefore could not be claimed as an equitable remedy.

Both the district court and Liberty Mutual insisted on applying *Varity* and gave *Amara* short shrift, even though the latter is controlling authority. While *Amara* did not explicitly state that litigants may seek equitable remedies under § 1132(a)(3) if § 1132(a)(1)(B) provides adequate relief, *Amara*'s holding in effect does precisely that. After the *Amara* court held that plaintiffs did not have reformation available to them under § 1132(a)(1)(B), the Supreme Court then went on to authorize reformation as a form of equitable relief under § 1132(a)(3).

If Appellants' factual allegations are true, then the instant case is highly analogous to *Amara*: in both cases, there was

a material lack of disclosure about the terms of a pension plan; in both cases, plaintiffs sought relief under § 1132(a)(1)(B); and in both cases, plaintiffs also sought equitable remedies under § 1132(a)(3). Thus, applying *Amara* to this case, if Appellants are unable to recover benefits based on an interpretation and enforcement of the Retirement Plan under § 1132(a)(1)(B), they can, however, receive reformation of the Retirement Plan as an equitable remedy under § 1132(a)(3). Additionally, *Amara* makes it very clear that remedies such as reformation, surcharge, estoppel, and restitution are traditionally equitable remedies, and the fact that they take a monetary form does not alter this classification. 131 S. Ct. at 1879–80.

### C.  *Applying* Amara *in Light of* Varity

Applying *Amara*'s conclusion that a plaintiff may seek relief under both § 1132(a)(1)(B) and § 1132(a)(3) does not contravene the ruling in *Varity*. In *Varity*, plaintiffs sought relief under ERISA § 409(a), 29 U.S.C. § 1109(a), which authorizes recovery to benefit plans for breaches of fiduciary duty. *Varity*, 516 U.S. at 508–09. The *Varity* court found that § 1109(a) provided relief only for benefit plans and not individuals, but held that § 1132(a)(3) could provide individualized relief. *Id.* at 509–12, 515. Thus, a key holding in *Varity* was that § 1132(a)(3) extends to other sections of the statute, even when § 1132 does not expressly provide a remedy for those sections. *Varity* did not explicitly prohibit a plaintiff from pursuing simultaneous claims under § 1132(a)(1)(B) and § 1132(a)(3).

We agree with the Eighth Circuit's application of *Amara* in *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711 (8th Cir. 2014). There, the Eighth Circuit held that a plaintiff may seek relief

under § 1132(a)(1)(B) and § 1132(a)(3), stating that "[the *Amara* court] addressed the issue in terms of available relief and did not say that plaintiffs would be barred from initially bringing a claim under the § 1132(a)(3) catchall provision simply because they had already brought a claim under the more specific portion of the statute, § 1132(a)(1)(B)." 762 F.3d at 727. The Eighth Circuit addressed prior cases that prohibited plaintiffs from seeking relief under both provisions and explained, "We do not read *Varity* . . . to stand for the proposition that [a plaintiff] may only plead one cause of action to seek recovery [for an ERISA violation]. Rather, we conclude those cases prohibit duplicate *recoveries* when a more specific section of the statute, such as § 1132(a)(1)(B), provides a remedy similar to what the plaintiff seeks under the equitable catchall provision, § 1132(a)(3)." *Silva*, 762 F.3d at 726 (emphasis in original). The Eighth Circuit's reading permits plaintiffs to present § 1132(a)(1)(B) and § 1132(a)(3) as alternative—rather than duplicative—theories of liability. This approach is an accurate application of *Amara* in light of *Varity* because it allows plaintiffs to plead alternate theories of relief without obtaining double recoveries.

This reading of *Varity* is consistent with other pre- and post-*Amara* cases that have held § 1132(a)(1)(B) and § 1132(a)(3) claims may proceed simultaneously so long as there is no double recovery. *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997) (holding plaintiffs could not recover under § 1132(a)(3) because they "[had] already won a judgment for damages under section 1132(a)(1) for the injuries they suffered as a result of the defendant's actions"), *overruled on other grounds*, *Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012). Other circuits have similarly

recognized that § 1132(a)(1)(B) and § 1132(a)(3) claims can proceed simultaneously if they plead distinct remedies.

In *Rochow v. Life Ins. Co. Of N. Am.*, a post-*Amara* case, the Sixth Circuit prohibited the plaintiff from pursuing his § 1132(a)(3) claim because he had a remedy available under § 1132(a)(1)(B). 780 F.3d 364 (6th Cir. 2015). However, the court reasoned that "[t]he purpose behind ERISA continues to be remedial, and [the plaintiff's] injury was remedied when he was awarded the wrongfully denied benefits and attorney's fees." *Id.* at 375. The plaintiff in *Rochow* had already received his remedy under § 1132(a)(1)(B) and the court essentially enjoined his § 1132(a)(3) claim, because, if successful, it would result in a double recovery for the same injury.

In *Devlin v. Empire Blue Cross & Blue Shield*, a pre-*Amara* case, the Second Circuit held that "should plaintiffs' claim under . . . § 1132(a)(1)(B) . . . fail, plaintiffs' breach of fiduciary duty claim is their only remaining remedy. *Varity Corp.* clearly provides that, where a plan participant has no remedy under another section of ERISA, she can assert a claim for breach of fiduciary duty under § [1132](a)(3)." 274 F.3d 76, 89 (2nd Cir. 2001).

Both *Rochow* and *Devlin* support Appellants' ability to seek relief under § 1132(a)(3) despite also pursuing a claim under § 1132(a)(1)(B). Here, Appellants seek the payment of benefits under § 1132(a)(1)(B), but if that fails, Appellants seek an equitable remedy for the breach of fiduciary duty to disclose under § 1132(a)(3). This is permitted under pre- and post-*Amara* cases across different circuits.

Some of our pre-*Amara* cases held that litigants may not seek equitable remedies under § 1132(a)(3) if § 1132(a)(1)(B) provides adequate relief. *See, e.g.*, *Ford v. MCI Commc'ns Corp. Health & Welfare Plan*, 399 F.3d 1076, 1083–84 (9th Cir. 2005) ("Because Ford asserted specific claims under 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(2), she cannot obtain relief under 29 U.S.C. § 1132(a)(3)."), *overruled on other grounds*, *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202 (9th Cir. 2011). However, those cases are now "clearly irreconcilable" with *Amara* and are no longer binding. *See Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc) (holding that "a three-judge panel is free to reexamine the holding of a prior panel" when the Supreme Court has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable").

This approach not only comports with *Amara* and *Varity*, it also adheres to the Federal Rules of Civil Procedure, which requires that "[a] pleading that states a claim for relief must contain . . . a demand for the relief sought, *which may include relief in the alternative* or different types of relief." Fed. R. Civ. P. 8(a)(3) (emphasis added). Finally, allowing plaintiffs to seek relief under both § 1132(a)(1)(B) and § 1132(a)(3) is consistent with ERISA's intended purpose of protecting participants' and beneficiaries' interests. *See, e.g.*, 29 U.S.C. § 1001; *see also Varity*, 516 U.S. at 513 ("ERISA's basic purposes favor a reading . . . that provides the plaintiffs with a remedy.").

Thus, the instant case turns on a factual determination of whether Liberty Mutual breached its fiduciary duty by failing to inform Golden Eagle employees that past service credit for the purpose of benefit accrual did not include the period prior

to October 1, 1997, when they were first employed by Golden Eagle. Because there are triable issues of fact, the district court erred in granting summary judgment on this claim.

**III.    Liberty Mutual Failed to Notify Appellants in Its Summary Plan Descriptions that Past Service Credit with Golden Eagle Would Not Count for Benefits Accrual, But Appellants Did Not Prove Harm or Reliance on the Summary Plan Descriptions.**

Under 29 C.F.R. § 2520.102-3(l), Summary Plan Descriptions must contain a statement "clearly identifying circumstances which may result in disqualification, ineligibility, or denial, loss, forfeiture, suspension, offset, reduction, or recovery . . . of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide." Additionally, 29 C.F.R. § 2520.102-2(a) requires the Summary Plan Description to be "written in a manner calculated to be understood by the average plan participant and shall be sufficiently comprehensive to apprise the plan's participants and beneficiaries of their rights and obligations under the plan."

The law is divided as to whether Appellants need to demonstrate detrimental reliance on the Summary Plan Descriptions.[6] The *Amara* court held that in cases that sought

---

[6] Several courts have held that reliance is necessary. *See, e.g.*, *Greeley v. Fairview Health Servs.*, 479 F.3d 612, 614 (8th Cir. 2007) ("In order for an employee to recover from his employer for a faulty [Summary Plan Description], this court requires the employee to show he relied on its terms to his detriment."); *Branch v. G. Bernd Co.*, 955 F.2d 1574, 1579 (11th Cir. 1992) ("We reiterate our holding that a beneficiary must show reliance *on the terms of the summary*.") (emphasis in original); *Govoni v.*

reformation and surcharge as remedies, detrimental reliance was not always necessary. 131 S. Ct. at 1881. In these instances, the plaintiffs need only show harm and causation. *Id.* at 1881–82.

After *Amara*, we held in *Skinner v. Northrop Grumman Retirement Plan B* that reformation under a fraud theory requires a showing that "(1) one party seeks reformation, (2) that party's assent was induced by the other party's misrepresentations as to the terms or effect of the contract, and (3) the party seeking reformation was justified in relying on the other party's misrepresentations." 673 F.3d 1162, 1166 (9th Cir. 2012).

Liberty Mutual had a duty to identify in its Summary Plan Descriptions circumstances which may have resulted in the *denial*[7] of any benefits that Appellants might otherwise have reasonably expected the Retirement Plan to provide. In this case, Appellants had the reasonable expectation, based on the alleged oral representations made by Liberty Mutual about

---

*Bricklayers, Masons & Plasterers Int'l Union*, 732 F.2d 250, 252 (1st Cir. 1984) ( "[T]o secure relief, [a plaintiff] must show some significant reliance upon, or possible prejudice flowing from, the faulty plan description."); *but see Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 106 (2d Cir. 2003) ("Moreover, requiring plan participants or beneficiaries to show detrimental reliance to recover for a deficient SPD contravenes ERISA's objective to promote distribution of accurate SPDs to employees.").

[7] The district court affirmed Liberty Mutual's position that Liberty Mutual was not required to state in its Summary Plan Descriptions which benefits Appellants were disqualified or ineligible for because Golden Eagle did not provide retirement benefits. However, the regulation also requires Liberty Mutual to state which benefits Appellants would be denied based on their reasonable expectations. 29 C.F.R. § 2520.102-3(l).

past service credit, that they would receive credit for the purpose of benefits accrual. From 1997 to 2001, the Summary Plan Descriptions did not contain this information. Even when the Summary Plan Description was amended in 2002, it stated that past service credit with Golden Eagle would count toward eligibility, vesting, early retirement, and spousal benefits. In light of the alleged representations made at the enrollment meetings, these terms—particularly "eligibility" and "vesting"—lack clarity in communicating how past service credit would be used and are not "written in a manner calculated to be understood by the average plan participant," as required by § 2520.102-2(a). Given that past service credit for the purpose of benefits accrual was at the fore of Golden Eagle employees' concerns during the benefits enrollment meetings and other informal encounters, it was not sufficient for Liberty Mutual to simply assume that Appellants would understand that they would not get credit for benefits accrual when they saw the words "eligibility" and "vesting," assuming that plan participants understood what "accrual" meant at all. Excluding explicit statements about benefits accrual was a material omission that Liberty Mutual should have clearly disclosed, especially since it had the opportunity to do so in its Summary Plan Descriptions.

With regard to reliance, Appellants are unable to prove even the lower standard of harm and causation. The district court found that Appellants were not harmed because they did not rely to their detriment on the allegedly faulty Summary Plan Descriptions. Based on the record, it is evident that many Golden Eagle employees, including some of the named Appellants, made the decision to stay with Liberty Mutual during the bidding period because they were under the impression that their past service credit would count toward accrual under the Retirement Plan. In fact, Kaerth left

Liberty Mutual for another job in 1998 after discovering that he would not get credit for benefits accrual.  However, the record shows that any opportunity costs that Appellants may have incurred were based on the oral representations made by Liberty Mutual and not on the Summary Plan Descriptions.  Thus, Appellants are unable to prove harm or detrimental reliance on the Summary Plan Descriptions.

## IV.    Class Certification Was Appropriate.

The standard of review for class certification on appeal is abuse of discretion.  *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1090 (9th Cir. 2010). While review of class certification decisions is deferential, the decisions of district courts are not afforded deference upon review of their determinations of questions of law.  *Id.* at 1091.

### A.  Commonality and Typicality

Rule 23 of the Federal Rules of Civil Procedure contains two sets of class certification requirements set forth in Rule 23(a) and (b). *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010). Under Rule 23(a), a litigant may sue on behalf of other members of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they

wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011).

Liberty Mutual argues that the district court erroneously certified Appellants as a class because the second and third requirements of Rule 23(a)—commonality and typicality— are not met in this case.  Liberty Mutual contends that the alleged misrepresentations are not the same for all Appellants because they each received information about past service credit from different sources.  Additionally, Liberty Mutual argues that Appellants' underlying claims require individualized proof of detrimental reliance, and the district court erred by concluding that this reliance could be presumed.  Thus, commonality and typicality requirements are not satisfied.

Liberty Mutual's contention that Appellants did not receive the same alleged misrepresentations is a question of fact, and, given the standard of review, we defer to the district court's finding that Liberty Mutual's claim "is not supported by the evidence."  We need not decide whether the district court erred in presuming Appellants' reliance to certify the class.  Instead, we affirm the district court on the ground that where the defendant's representations were allegedly made on a uniform and classwide basis, individual issues of reliance do not preclude class certification.  *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) ("We emphasize that the defense of non-reliance is not a basis for denial of class certification.").  Therefore, the district court correctly held that Appellants met the commonality and typicality requirements.

*B. Rules 23(b)(1)(A) and (B)*

Under Rule 23(b)(1)(A), a class action can be maintained if "prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class[.]"  Rule 23(b)(1)(B) states that a class action can be maintained if "prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]"

Liberty Mutual argues that class certification under Rule 23(b)(1)(A) was improper because Appellants seek monetary damages and because some of the Appellants may be able to make the necessary showing to be entitled to relief while others may not.  Liberty Mutual goes on to argue that class certification was also improper under Rule 23(b)(1)(B) because it would "be inconsistent with the terms of the [Retirement Plan] and ERISA to award benefits to some Plaintiffs and deny benefits to others depending on the oral representations made to that particular Plaintiff."

Liberty Mutual's arguments are unpersuasive.  While Appellants seek monetary damages in this case, they also seek relief in the form of equitable remedies.  Liberty Mutual's remaining two arguments are essentially the same, as they address the concern that some Appellants would receive relief while others would not.  However, this seems to be an argument in favor of class certification.  Rule

23(b)(1)(A) prevents the prosecution of separate actions that would create the risk of "inconsistent or varying adjudications . . . that would establish incompatible standards of conduct for the party opposing the class." Prosecuting separate actions in this case would have the result of subjecting Liberty Mutual to incompatible standards of conduct, a consequence that Liberty Mutual has previously conceded would likely happen. For the above reasons, the district court's class certification was proper.

## CONCLUSION

For the foregoing reasons, we find the following:

1. Appellants are not entitled to past service credit under the terms of the Retirement Plan. We therefore **AFFIRM** the district court's grant of summary judgment as to claim (1) under 29 U.S.C. § 1132(a)(1)(B).

2. Appellants may pursue simultaneous claims under 29 U.S.C. § 1132(a)(1)(B) and § 1132(a)(3). We therefore **REVERSE** the district court's grant of summary judgment as to claim (2) under 29 U.S.C. § 1132(a)(3), and **REMAND** for determinations of fact and equitable relief in the form of reformation and surcharge.

3. Appellants are unable to prove harm or detrimental reliance on Liberty Mutual's failure to disclose information about past service credit in the Summary Plan Descriptions. We therefore **AFFIRM** the district court's grant of summary judgment as to

claim (4) under 29 C.F.R. §§ 2520.102-3(l) and 2520.102-2(a).

4. We **AFFIRM** the district court's grant of class certification.

**AFFIRMED in part, REVERSED in part; REMANDED.** Each side to bear its own costs.