NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

AUG 25 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

NEIL SORGER,

Plaintiff-Appellant,

v.

NOVARTIS CORPORATION DEATH
BENEFIT & DISABILITY PLAN,
METROPOLITAN LIFE INSURANCE
COMPANY,

Defendants-Appellees.

No.    20-15224

D.C. No. 3:19-cv-00105-JSC

MEMORANDUM*

Appeal from the United States District Court
For the Northern District of California
Jacqueline Scott Corley, Magistrate Judge, Presiding

Argued and Submitted May 14, 2021
San Francisco, California

Before:  NGUYEN and COLLINS, Circuit Judges, and BURGESS,** Chief
District Judge.

Neil Sorger appeals from the district court's order concluding that Novartis

Corporation Death Benefit and Disability Plan (the "Plan") and Metropolitan Life

---

\*       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Timothy M. Burgess, Chief United States District
Judge for the District of Alaska, sitting by designation.

Insurance Company ("MetLife," and together, "Appellees") did not abuse their discretion in terminating Sorger's supplemental long term disability ("LTD") benefits pursuant to the Plan's pre-existing condition clause in the Summary Plan Description.[1]  We have jurisdiction pursuant to 28 U.S.C. § 1291.  We affirm.

The Plan is a self-funded plan governed by ERISA that provides the LTD benefits coverage at issue.  Plan participants are entitled to basic LTD benefits equal to 50% of the participant's total pay, and participants may purchase supplemental LTD coverage to be eligible to receive an additional 17% of total pay.  The funds for supplemental LTD benefits are held in a Voluntary Employee Benefit Association ("VEBA") Trust.  Novartis is reimbursed from the VEBA Trust for supplemental LTD benefits paid out under the Plan.  MetLife serves as Claims Administrator and Plan Administrator, meaning, it determines whether a

---

[1] The Summary Plan Description provides that "[i]f you have a pre-existing condition and elect supplemental LTD coverage, your supplemental LTD coverage for that pre-existing condition will not take effect for 12 months after the effective date of your supplemental LTD coverage."  The Plan defines a "pre-existing condition" as:

an injury, sickness, or pregnancy for which you, in the three months before your supplemental LTD coverage took effect:

- received medical treatment, consultation, care, or services,
- took prescription medications or had medications prescribed, or
- had symptoms or conditions which would cause a reasonably prudent person to seek diagnosis, care, or treatment.

Plan participant is eligible to receive benefits under the Plan. Because the parties are otherwise familiar with the factual and procedural history of the case, we need not further recount it here.

## I.

First, Sorger argues that the district court erred by reviewing the supplemental LTD benefits decision under an abuse of discretion standard rather than de novo. "We review de novo a district court's choice and application of the standard of review to decisions by fiduciaries in ERISA cases. We review for clear error the underlying findings of fact." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962 (9th Cir. 2006) (en banc) (citation omitted). "Whether a plan is an ERISA plan is a finding of fact." *Steen v. John Hancock Mut. Life Ins. Co.*, 106 F.3d 904, 913 (9th Cir. 1997). Once it is determined that a plan is governed by ERISA, we review the denial of benefits "under a de novo standard unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 629 (9th Cir. 2009) (simplified) (quoting *Burke v. Pitney Bowes Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1023 (9th Cir. 2008)). "Where . . . the plan 'does grant such discretionary authority, we review the administrator's decision for abuse of discretion.'" *Id.* (quoting *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 866 (9th Cir. 2008)). "The

manner in which a reviewing court applies the abuse of discretion standard, however, depends on whether the administrator has a conflicting interest." *Id.* If "the same entity that funds an ERISA benefits plan also evaluates claims," then "the plan administrator faces a structural conflict of interest" because "benefits are paid out of the administrator's own pocket." *Id*. at 630.

The district court did not commit clear error when it found that the Plan sponsored by Novartis was the only ERISA plan at issue in this case. The district court found that Sorger presented no evidence that the VEBA Trust was used as anything other than a funding mechanism for the Plan's supplemental LTD benefits or that the VEBA Trust is a separate ERISA Plan. The district court also found that the predecessor to the VEBA Trust was implemented to pay for certain employee benefits on a tax-advantaged basis; however, by the time Sorger joined the Plan, the VEBA Trust was only used as a funding mechanism for supplemental LTD benefits. Sorger did not present any argument on appeal that would disturb the district court's finding.

Having concluded that there is only one ERISA plan at issue, we further conclude that the district court properly determined that MetLife's decision should be reviewed under an abuse of discretion standard. We must evaluate de novo whether the Plan "unambiguously gives the plan administrator discretion to determine eligibility or construe the plan's terms." *Burke*, 544 F.3d at 1023–24.

4

Here, the district court correctly concluded that there is no structural conflict of interest and that the Plan unambiguously gives MetLife discretion to determine eligibility and construe the Plan's terms. The Plan contains an unambiguous provision giving the Plan Administrator the "express discretionary authorit[y]" to, in pertinent part: (1) "construe and interpret the terms of the Plan, and to resolve all ambiguities, inconsistencies or omissions therein"; and (2) "decide all questions of eligibility and determine the amount, manner and time of payment of any benefits."

The Summary Plan Description states that MetLife is the Claims Administrator for the LTD benefits under the Plan and that it "is responsible for processing and deciding all claims for benefits . . . as well as all appeals of denied claims." There is no conflict of interest because Novartis, through the VEBA Trust, funds the supplemental LTD benefits, while MetLife has total discretion to determine who receives the benefits. Sorger does not dispute that the Plan delegates authority to MetLife. Instead, Sorger predicates his argument against the application of an abuse of discretion standard on there being two ERISA plans, which he did not establish.

Since the district court did not clearly err by finding only one ERISA plan at issue, and there is no conflict of interest vis-à-vis MetLife, the district court properly reviewed MetLife's decision under an abuse of discretion standard.

5

## II.

Second, the district court did not abuse its discretion in concluding that the pre-existing condition clause in the Summary Plan Description was valid. Under abuse of discretion review, we must consider whether the decision was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)). "[A]n administrator's denial of benefits must be upheld 'if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith.'" *Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 957–58 (9th Cir. 2016) (quoting *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1113 (9th Cir. 2000)). Sorger argues that the pre-existing condition clause in the Summary Plan Description is invalid because the Plan says that MetLife will establish the pre-existing condition limitations, but MetLife did not create the relevant limitation here. Contrary to Sorger's argument, by the plain language of the Plan and Task Orders, MetLife was not limited to only enforcing conditions it created.[2] By its terms, the Plan expressly incorporates, in its entirety, the Summary

---

[2] The Task Orders govern, in part, MetLife's scope of duties under the Plan. For example, the Task Order No. 2 states "[Novartis] and MetLife acknowledge that MetLife assumes the responsibility and discretionary authority for approving or denying Plan Benefits in whole or part."

6

Plan Description prepared by Novartis. Moreover, Task Order No. 2, which is an agreement between Novartis and MetLife, expressly incorporates the Summary Plan Description prepared by Novartis. Given MetLife's "express discretionary authorit[y]" to, in pertinent part, "construe and interpret the terms of the Plan," MetLife has discretion to construe and enforce the Summary Plan Description. To the extent Sorger argues that the Plan impermissibly delegates authority to MetLife, that argument fails because Novartis sets the terms of the Summary Plan Description, which MetLife agreed to accept under the Task Order. The terms of the Plan give MetLife "express discretionary authorit[y]" to "delegate authority with regard to its responsibilities." This includes the Plan's reference to "pre-existing condition limitations as established from time to time by the Claims Administrator."

## III.

Third, the district court properly found the pre-existing condition clause to apply by its terms. MetLife did not abuse its discretion by (1) interpreting part of the pre-existing condition clause as requiring twelve consecutive months as an active employee; (2) applying the pre-existing condition clause even though Sorger assertedly was not diagnosed with or specifically treated for his pre-existing

7

condition during the look-back period[3]; and (3) determining that the pre-existing condition clause did not expire on January 1, 2014.

In construing an ERISA plan, courts must "apply contract principles derived from state law . . . guided by the policies expressed in ERISA and other federal labor laws." *Gilliam v. Nev. Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007) (alteration in original) (quoting *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997)). Thus, the "terms in an ERISA plan should be interpreted 'in an ordinary and popular sense as would a [person] of average intelligence and experience.'" *Id.* (alteration in original) (quoting *Richardson*, 112 F.3d at 985). MetLife's interpretation will be upheld "so long as [it] does not construe the language of the plan unreasonably or render its decision without explanation." *Montour*, 588 F.3d at 630.

Sorger's argument that MetLife abused its discretion by not considering Sorger to be an "active employee" under the Plan was properly rejected by the district court. The Plan states that "[i]f you should become disabled because of a pre-existing condition, no supplemental LTD benefits are payable under this plan for that disability unless . . . you have been an active employee under this plan for [twelve] consecutive months." The district court reasoned that the pre-existing

---

[3] Sorger elected the supplemental LTD benefits coverage effective January 1, 2013. The relevant three-month look-back period is October 1, 2012, to December 31, 2012.

condition limitation specifically qualifies "employee" with "active," which shows that Novartis intended Plan participants to actively work for at least twelve consecutive months before receiving supplemental LTD benefits for a pre-existing condition. Sorger's argument that MetLife abused its discretion by not counting the time Sorger was receiving disability benefits under the Plan stretches the plain language of the Plan and is unpersuasive.

Sorger also argues that the pre-existing condition clause does not apply even if we adopt the district court's interpretation. Sorger cites *McLeod v. Hartford Life & Accident Insurance Co.*, 372 F.3d 618, 625 (3d Cir. 2004), for the proposition that Sorger was not treated specifically for the condition which MetLife determined was pre-existing and that MetLife improperly terminated his supplemental LTD benefits as a result. *McLeod* is distinguishable because the *McLeod* court applied a heightened standard of review to the benefits determination, and "no one even suspected" that the appellant's symptom was connected to the appellant's pre-existing condition. *Id.* at 624. Here, the district court properly applied the more deferential abuse of discretion standard, and the record shows that Sorger "received medical treatment, consultation, care, or services" for his pre-existing condition. In light of Family Nurse Practitioner ("FNP") Nancy Bryant's notes from Sorger's November 2, 2012 office visit, it cannot be reasonably argued that "no one even suspected" Sorger suffered from the

condition with which he was ultimately diagnosed.

Finally, Sorger's argument that the pre-existing condition clause does not apply to any disability after January 1, 2014, is similarly unavailing. The Plan states that Sorger's "supplemental LTD coverage for [a] pre-existing condition will not take effect for [twelve] months after the effective date of [his] supplemental LTD coverage." The district court properly concluded that this language addresses the effective date of the supplemental coverage, meaning, Sorger would be able to seek supplemental LTD benefits coverage for his pre-existing condition beginning January 1, 2014. It does not, however, negate the pre-existing condition clause altogether or otherwise negate terms of the Plan which may prevent Sorger from obtaining supplemental LTD coverage for a pre-existing condition.

IV.

Fourth, MetLife did not abuse its discretion in denying coverage for Sorger's pre-existing condition. We hold that MetLife had support for its decision based on Sorger's visit to FNP Bryant in November 2012 and the report of Independent Physician Consultant Dr. Warren Taff, who reviewed Sorger's extensive medical records and concluded that Sorger's condition "was most likely underlying and did exist prior to a definitive diagnosis being reached." Dr. Taff further concluded that Sorger "received 'consultation or care for symptoms'" associated with his pre-existing condition when he visited FNP Bryant in November 2012. While the pre-

10

existing condition clause would also apply if Sorger "took prescription medications or had medications prescribed" for his pre-existing condition during the look-back period, the record indicates that Sorger may have been prescribed certain medications to specifically treat other conditions not at issue here. Even if we were to agree with Sorger on this point, we would still conclude that MetLife did not abuse its discretion in concluding that Sorger "received medical treatment, consultation, care, or services" for his pre-existing condition during the look-back period. Accordingly, MetLife's decision was not illogical, implausible, or without support in the factual record.

**AFFIRMED.**